[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12211

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 4, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-20177-CR-SH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT ECKHARDT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 4, 2006)**

Before DUBINA and KRAVITCH, Circuit Judges, and MILLS,[*] District Judge.

MILLS, District Judge:

---

[*] Honorable Richard Mills, U.S. District Judge of the Central District of Illinois, sitting by designation.

## I. FACTS

During the 1980's, Robert Eckhardt occasionally worked for the Teamsters Union Local 390 in south Florida. Eckhardt was not a full union member and he worked only when called.

Eckhardt's relationship with the union deteriorated and he began making threatening calls to its office. In 1994, he pled guilty to making threatening phone calls to the union in violation of 18 U.S.C. § 875(b).

Eckhardt resumed his telephone campaign on December 8, 1997, calling the Teamsters Local 769 in Florida from his father's home in Henderson, NV. This continued through June 8, 1999. During that year and a half period, Eckhardt made approximately 200 calls to a voicemail extension belonging to Local 769 office worker Sue Ann Creech. Although Ms. Creech never met Eckhardt, he called her number up to 30 times per week between March 28 and June 8, 1999. Count V of the Indictment alleged that Eckhardt said things such as: "Hey Sue, why don't you take one of them fuckin' school buses . . . and use it like a vibrator up your cunt" . . . "use them fuckin' garbage trucks like a fuckin' dildo and stick 'em up your cunt."[1] Count VI alleged that Eckhardt told Ms. Creech "I can

---

[1] The full text of Eckhardt's comments is as follows:

Hey Sue! Why don't you take one of them fuckin' school buses or one of them

fuckin' wet my balls off . . . [t]here's your threat, have me locked up."[2]  Eckhardt

did not identify himself and he always left his messages outside of business hours.

The union provided the FBI with copies of Eckhardt's phone messages.

The government charged Eckhardt with violating the Communications

Decency Act , 47 U.S.C. § 223, *et seq*.  Eckhardt unsuccessfully moved the district

court to dismiss the charges because the statute was unconstitutionally vague and

the alleged offense conduct was not obscene.  At trial, Eckhardt contended that he

was not the person who called Ms. Creech.  The government rebutted this by

presenting voice exemplars from Eckhardt's 1994 conviction, various uncharged

phone calls from 2003, and the 1998-1999 calls to Ms. Creech.  Ms. Creech, the

---

fuckin' passenger buses and use it like a vibrator up your cunt.  When your mother
and father died, did they put the casket in a bus?  Did they?  And if they're not
dead, when they do die, I hope they stick it in a bus.  Say hello to Tony.  Capiche?
Remember, use them buses and them fuckin' garbage trucks like a fuckin' dildo
and stick 'em up your cunt.  Good bye.

[2]  Eckhardt actually said "rat" rather than "wet."  However, because the Presentence
Investigation Report ("PSR") used the word "wet" and Eckhardt did not object, "wet" is part of
the record.  In any event, the full text of Ekhardt's comments in Count VI is as follows:

Hey!  You sent that little greasy bitch here uh?  And take that little guinea fuckin'
cunt with that pimple face fuckin' bitch from fuckin' Fort Lauderdale?  Or some
of them kids from fuckin' Florida.  You listen to this.  I said no over the road, I'm
stayin' right where I'm at.  And you fuck up, here's your threat pal, have me
locked up.  This way I can fuckin' wet my balls off.  Fuck you!  How does that
sound?  Fuck you!  No garbage, no over the road, no nothin' Fuck you.  There's
your threat, have me locked up.  Go ahead.  Take your conventions and everything
else and stick 'em up your mother's cunt. (laughs)

3

FBI case agent from Eckhardt's 1994 conviction, and the general manager of the Pensacola motel where Eckhardt lived all said that the voice on the tape belonged to Eckhardt. Over Eckhardt's objection, the district court admitted recordings of the 2003 calls, Eckhardt's 1992 plea agreement, and his 1992 judgment and conviction.

At the conclusion of the evidence, Eckhardt moved for acquittal pursuant to Federal Rule of Criminal Procedure 29(a). Eckhardt contended that the phone calls were protected speech because the comments expressed dissatisfaction with the Teamsters union. Alternatively, he claimed the language in Counts V and VI was not obscene, and the calls listed in Count VII were not harassing. The district court denied Eckhardt's Rule 29 motion. Over Eckhardt's objection, the court instructed the jury that it could convict Eckhardt if his speech was "filthy, lewd, lascivious, or indecent" so long as Eckhardt had a general intent to violate § 223. During the government's rebuttal, the prosecutor said that Eckhardt should apologize to Ms. Creech and others for the harassment. Eckhardt objected to the prosecutor's remark.

A jury convicted Eckhardt and the district court sentenced him to 24 months in prison. The sentence included a two-point enhancement because there were more than two threats in Counts 5 and 6 of the Indictment. Eckhardt timely

4

appealed. Among other things, he argues that he should not have been convicted

of obscenity because his calls addressed matters of public concern.

## II. ANALYSIS

### A. Eckhardt's Vagueness and Overbreadth Challenges

We review a district court's conclusions as to the constitutionality of a

challenged statute *de novo*. United States v. Panfil, 338 F.3d 1299, 1300 (11th

Cir.2003). Eckhardt was tried and convicted of anonymously making "annoying,

abusive, harassing, or threatening" telephone calls in violation of 47 U.S.C. §

223(a)(1)(C). Eckhardt asserts that § 223(a)(1)(C) is overbroad because it

potentially criminalizes protected speech and vague because it failed to give him

notice that his conduct was forbidden. The Sixth Circuit rejected an identical

challenge to § 223 in United States v. Bowker, 372 F.3d 365 (6th Cir. 2004),

*vacated on other grounds*, 543 U.S. 1182, 125 S.Ct. 1420, 161 L.Ed.2d 181

(2005). The charges in Bowker arose after defendant Bowker made over 100

anonymous phone calls to a television news reporter over a seven month period.

Many calls were threatening and sexual in nature. Id. at 372-73. The Bowker

decision reasoned that § 223(a)(1)(C) was not overbroad because:

> the focus of the telephone harassment statute is not simply annoying
> telephonic communications. It also prohibits abusive, threatening or
> harassing communications. Thus, the thrust of the statute is to
> prohibit communications intended to instill fear in the victim, not to

5

provoke a discussion about political issues of the day. Id. at 379.

The court noted that while § 223(a)(1)(C) could have unconstitutional applications, that fact does not warrant facial invalidation. Id. at 380, citing Parker v. Levy, 417 U.S. 733, 760, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (facial invalidation not appropriate when the remainder of the statute "covers a whole range of easily identifiable and constitutionally proscribable conduct") (additional citation omitted). Bowker's speech was not constitutionally protected because he called his victim "predominately, if not exclusively, for the purpose of invading her privacy and communicating express and implied threats of bodily harm." Id.

Eckhardt called his victim approximately 200 times during a year and a half period. Although Eckhardt claims for the first time on appeal that the calls addressed matters of public concern (*i.e.* alleged corruption), his calls rarely addressed anything that could be construed in that manner. The overarching purpose of Eckhardt's sexually laced calls was to harass and frighten Ms. Creech. "This type of speech is not constitutionally protected." Id., citing United States v. Landham, 251 F.3d 1072, 1079 (6th Cir.2001); see also Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957) ("[O]bscenity is not within the area of constitutionally protected speech."). Thus, we agree with

6

Bowker that § 223(a)(1)(C) is not overbroad. Id. at 380.

Eckhardt's vagueness challenge also fails. Vagueness may invalidate a criminal statute if it either (1) fails "to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or (2) authorizes or encourages "arbitrary and discriminatory enforcement." City of Chicago v. Morales, 527 U.S. 41, 56, 119 S.Ct. 1849, 1859, 144 L.Ed.2d 67 (1999) (citation omitted). The Bowker decision concluded that the telephone harassment statute provided sufficient notice of its prohibitions because citizens need not guess what terms such as "harass" and "intimidate" mean. 372 F.3d at 381. There as here, "the meaning of the words used to describe the [impermissible] conduct can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning." Id. Thus, we agree that § 223(a)(1)(C) is not void for vagueness. Id.; see also ApolloMedia Corp. v. Reno, 19 F.Supp.2d 1081, 1091-92 (N.D.Cal. 1998) (holding that prior version of § 223(a)(1)'s prohibition on obscenity is not impermissibly vague). The statute provides adequate notice of unlawful conduct.

**B. The Rule 29(a) Motion for Acquittal**

In pertinent part, Federal Rule of Criminal Procedure 29(a) states that: "After the government closes its evidence or after the close of all the evidence, the

7

court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Id. In reviewing the denial of a motion for acquittal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We review *de novo* the sufficiency of evidence to support convictions. United States v. Diaz-Boyzo, 432 F.3d 1264, 1269 (11th Cir. 2005). Because Eckhardt did not present any evidence following his Rule 29 motion, the sufficiency of the evidence against him must be evaluated solely in terms of the proof presented in the government's case-in-chief. United States v. Thomas, 987 F.2d 697, 702-03 (11th Cir. 1993).

In Counts V and VI of the Indictment, the government charged Eckhardt with violating § 223(a)(1)(A). Section 223(a)(1)(A) prohibits individuals from using, in interstate communications, a telecommunications device to knowingly make "any comment, request, suggestion, proposal, image, or other communication which is obscene or child pornography, with intent to annoy, abuse, threaten, or harass another person . . . " Id.

Count V alleged that Eckhardt said "Hey Sue, why don't you take one of

them fuckin' school buses . . . and use it like a vibrator up your cunt" . . . " use them fuckin' garbage trucks like a fuckin' dildo and stick 'em up your cunt." Count VI alleged that Eckhardt told Ms. Creech "I can fuckin' wet my balls off . . . [t]here's your threat, have me locked up . . . Take your conventions and everything else and stick 'em up your mother's cunt."  Eckhardt contends that these statements are not obscene under Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

In Miller, the Supreme Court defined obscenity as a work that (1) taken as a whole, appeals to the prurient interest under contemporary community standards, (2) depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (3) taken as a whole, lacks serious literary, artistic, political, or scientific value.  413 U.S. at 24, 93 S.Ct. at 2615.  Eckhardt argues that the comments in Counts V and VI were not obscene because the purpose for the calls was to complain and express hostility towards the Teamsters.

Applying Miller to the facts of this case, we conclude that Eckhardt's phone calls were obscene.  The average person today would view Eckhardt's phone calls, taken as a whole, as appealing to the prurient interest and conclude that he described sexual activities in a patently offensive way.  Eckhardt's contention that his purpose and intent are relevant in determining whether the phone calls are

9

obscene does not change the result. Indeed, we must consider Eckhardt's purpose and intent when applying the third step of the Miller test. Considered in their entirety, the phone calls in both Counts V and VI lack serious value. As for Count V, Eckhardt spent most of the call describing sexual activities that appeal to the prurient interest in a patently offensive way (e.g., "[U]se them . . . fuckin' garbage trucks like a fuckin' dildo and stick them up your cunt."). Despite Eckhardt's alleged intent and purpose in making the phone calls, his oblique references to Teamsters activities and a former teamsters local president do not provide his phone call with serious value when taken as a whole. The call in Count VI contains similar descriptions of sexual activities in a patently offensive way (e.g., "Take your conventions and everything else and stick 'em up your mother's cunt.") but provides more direct references to Eckhardt's complaints with the union activities. Taken as a whole, however, we also conclude that the call in Count VI lacks serious value.

Eckhardt claims that he lacked this intent and the purpose of his calls was to express anger and dissatisfaction with the union. Eckhardt claims his comments are on a par with those made in United States v. Popa, 187 F.3d 672 (D.C. Cir. 1999). In Popa, a defendant made seven anonymous telephone calls to a U.S. Attorney's Office. The defendant called, among other things, to complain about

10

having been assaulted by police officers and about the prosecutor's conduct of a case against him. A jury convicted the defendant of violating § 223(a)(1)(C), but the D.C. Circuit reversed the conviction finding that the defendant's speech deserved First Amendment protection because complaints about the actions of a government official were a significant component of his calls. Id. at 677. Unlike Popa, the instant case does not involve a government official and Eckhardt's calls had virtually no meritorious component. His scant comments about union activity were incidental inclusions in his attempts to annoy and harass Ms. Creech.

Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the § 223 violations beyond a reasonable doubt. Thus, the district court properly denied Eckhardt's Rule 29 motion for acquittal.

### C. Rule 404(b) Evidence and Prosecutorial Misconduct

We review a district court's evidentiary rulings for an abuse of discretion. United States v. Henderson, 409 F.3d 1293, 1297 (11th Cir. 2005). Federal Rule of Evidence 404(b) "is a rule of inclusion, and . . . accordingly 404(b) evidence, like other relevant evidence, should not be excluded when it is central to the prosecution's case." United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003) (internal citations and quotations omitted). Under Rule 404(b):

11

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Id.

Evidence is admissible under Rule 404(b) if: (1) it is relevant to an issue other than the defendant's character; (2) the prior act is proved sufficiently to permit a jury determination the defendant committed the act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and it must satisfy Federal Rule of Evidence 403.[3] Jernigan, 341 F.3d at 1280.

Although the 1992 and 2003 phone calls were not charged in this case, the district court allowed recordings of those calls to be played pursuant to Rule 404(b).[4]  Because Eckhardt denied making any calls to Ms. Creech from 1997-

---

[3]  Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id.

[4]  The government contends that the 2003 calls were not subject to Rule 404(b) because they are *res gestae*.  In this Circuit, "evidence of other crimes, wrongs, or acts" falls outside the scope of Rule 404(b) when it is: "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." United States v. Veltmann, 6 F.3d 1483, 1498 (11th Cir. 1993).  Although the calls from 2003 arose as part of the series of phone calls that started in 1997, those calls were charged offense. not necessary to the story of Eckhardt's crime and they were not inextricably intertwined with the

12

1999, the recordings and the Judgment and Conviction were relevant in identifying his voice. After all, the caller identified himself as Robert Eckhardt and Ms. Creech testified that the voice on the recordings was the voice of the man who called her during 1997-1999. The recordings, Judgment and Conviction, and testimony of the special agent who investigated Eckhardt's prior case was also relevant in establishing Eckhardt's intent to annoy and harass Ms. Creech. Eckhardt's previous conviction tended to show a criminal purpose. See Jernigan, 341 F.3d at 1280. The nature of this evidence was highly probative and cannot be considered so prejudicial—despite Eckhardt's occasional denigration of blacks—to warrant exclusion under Rule 403. Thus, the recordings, the Judgment and Conviction, and the testimony of the special agent were all properly admitted.

Eckhardt also argues that certain comments by the prosecutor during opening, closing, and rebuttal amount to prosecutorial misconduct. The Court reviews a prosecutorial misconduct claim *de novo* because it is a mixed question of law and fact. See United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997).

To establish prosecutorial misconduct, "(1) the remarks must be improper,

---

Eckhardt's crime could be fully presented via the interstate phone calls he made from Nevada. Thus, the 2003 phone calls are not *res gestae*.

and (2) the remarks must prejudicially affect the substantial rights of the defendant." See United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. United States v. Wilson, 149 F.3d 1298, 1301 (11th Cir.1998). When the record contains sufficient independent evidence of guilt, any error is harmless. United States v. Adams, 74 F.3d 1093, 1097-98 (11th Cir.1996).

Eckhardt contends that the government engaged in prosecutorial misconduct when the prosecutor said: that the phone calls in this case began in December 1997 "and continued all the way through 2003"; that many calls were not charged in the Indictment only because they were intrastate and not barred by § 223; that Eckhardt's comments to Ms. Creech were "garbage"; and that Eckhardt should apologize for harassing his victims. Even if these comments were inappropriate, reversal is only warranted if the entire trial is so replete with errors that Eckhardt was denied a fair trial. See United States v. McLain, 823 F.2d 1457, 1462 (11th Cir. 1987) (holding that prosecutor's misconduct in disparaging defense counsel was not a sufficient basis for reversing, though concluding that reversal was warranted in light of the cumulative effect of all errors in the case), overruled on other grounds as recognized by United States v. Watson, 866 F.2d 381, 385 n. 3

(11th Cir. 1989). When considered cumulatively, the prosecutor's statements are too limited to demonstrate the requisite repleteness. Moreover, the content, quantity, and span of Eckhardt's calls, coupled with the positive identification of Eckhardt's voice, shows that the weight of the evidence would have led to his conviction regardless of the prosecutor's statements.

### D. Jury Instructions

We review a district court's refusal to give a particular jury instruction for abuse of discretion. United States v. Yeager, 331 F.3d 1216, 1222 (11th Cir.2003). The failure of a district court to give an instruction is reversible error where the requested instruction (1) was correct, (2) was not substantially covered by the charge actually given, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense. Id. at 1223. The Court applies a deferential standard of review to the jury instructions a trial court actually gives. United States v. Puche, 350 F.3d 1137, 1148 (11th Cir. 2003). "Under this standard, we will only reverse if we are left with a substantial and eradicable doubt as to whether the jury was properly guided in its deliberations." Id. (internal quotations and citation omitted).

Over Eckhardt's objection, the district court instructed the jury that §

223(a)(1)(A) prohibited "obscene, lewd, lascivious, filthy, or indecent" phone calls.  Eckhardt objected to the inclusion of the words "lewd, lascivious, filthy, or indecent" because those words were conceptually subsumed in the term "obscene."  Because § 223 does not include the words lewd, lascivious, filthy, or indecent, Eckhardt's requested instruction correctly asked for those words to be deleted.  However, by stating how those words are descriptors of the term "obscene," defense counsel essentially conceded that the district court's instruction substantially covered the § 223 charges.  Moreover, because Eckhardt contended that he did not make the alleged phone calls, the district court's instruction did not impair Eckhardt's chosen defense.  Eckhardt has therefore failed to establish reversible error.  Yeager, 331 F.3d at 1223.

Eckhardt also argues that the district court improperly instructed the jury by not stating that a conviction required proof of specific intent.  Since Eckhardt failed to object to this prior to the time when the jury retired to deliberate, the issue can only be reviewed for plain error.  See Federal Rule of Criminal Procedure 30(d) and 52(b).  Under the plain error standard, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights.  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only

16

if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Williams, 445 F.3d 1302, 1308 (11th Cir. 2006).

The district court instructed the jury that Eckhardt "intended" to violate § 223 if he acted "voluntarily and intentionally and not because of mistake or accident." Eckhardt agreed to the instruction and the instruction tracked the language of § 223. Moreover, the hundreds of obscene phone calls Eckhardt made would allow any reasonable fact finder to conclude beyond a reasonable doubt that he intended to harass Ms. Creech. Eckhardt, therefore, cannot establish plain error.

### E. Eckhardt's Sentence

At sentencing, the district court determined that the phone calls in Counts 5 and 6 contained two or more threats. It enhanced Eckhardt's base offense level by two points pursuant to United States Sentencing Guideline § 2A6.1(b)(2). Eckhardt did not object to the enhancement. Thus, the Court reviews the propriety of the enhancement for plain error. See United States v. Williams, 408 F.3d 745, 748 (11th Cir. 2005). An error is plain if it is obvious and clear under current law. United States v. Humphrey, 164 F.3d 585, 588 (11th Cir. 1999). "The defendant

17

has the burden of persuasion as to prejudice regarding the third part of the analysis." Williams, 408 F.3d at 748.

When an offense does not involve a threat to injure a person or property, a defendant convicted under § 223(a)(1)(C), (D), or (E) has a base offense level of 6. See United States Sentencing Guidelines § 2A6.1(2). When the offense involves threatening or harassing communications, the Sentencing Guidelines establish a base offense level of 12. See U.S.S.G. § 2A6.1(a)(1). The district court found that Eckhardt's calls were threatening and that the calls in Counts 5 and 6 of the Indictment contained two or more threats. Thus, it determined that Eckhardt had a total offense level of 14 pursuant to § 2A6.1(a)(1) and § 2A6.1(b)(2). That, and a criminal history category II, led the district court to sentence Eckhardt to 24 months in prison.

The record contains at least three threats on which the district court may have relied in imposing the two-point enhancement. One threat is contained in the calls specified in the Indictment and two threats were made during Eckhardt's 1992 phone calls. Application Note 1 for § 2A6.1 advises that in determining whether a two-point enhancement applies under § 2A6.1(b)(2), the court should consider both the conduct that occurred prior to the offense and conduct that occurred during the offense. See § 2A6.1, App. Note. 1. The conduct that

occurred must be substantially and directly connected to the offense, under the facts of the case taken as a whole. Id.

Arguably, the 1992 calls are not "substantially and directly connected" to calls included in the Indictment because the 1992 calls did not target Ms. Creech. However, the Sentencing Guidelines do not say how to determine whether prior threats are "substantially and directly connected" to an offense. Id. It is, therefore, unclear whether § 2A6.1(b)(2)'s enhancement is triggered in a situation like this—where multiple threatening calls were left in Ms. Creech's voicemail but the content of those calls targeted more than one victim. Because neither this Circuit nor any other has published an opinion addressing this issue, the district court did not commit plain error when it imposed the two-point enhancement. See Humphrey, 164 F.3d at 588.

## III. CONCLUSION

For the foregoing reasons, the district court's decision is **AFFIRMED**.