[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 18, 2008
THOMAS K. KAHN
CLERK

No. 06-16603
Non-Argument Calendar

_____

D. C. Docket No. 06-60214-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS MEJIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 18, 2008)**

Before BIRCH, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Luis Mejia appeals his conviction for (1) producing counterfeit, alien-

registration cards, in violation of 18 U.S.C. § 1546(a); and (2) committing identification-document fraud, in violation of 18 U.S.C. § 1028(a)(1). We affirm.

## I. BACKGROUND

The facts of Mejia's crimes were presented at his trial by Pedro Guillen, a confidential informant for the government, who provided information in exchange for being given a work permit. In April 2006, while working at Port Everglades, Florida, Guillen testified that he overheard Mejia and another man discussing producing false identification documents. Guillen told Mejia that Guillen had three friends who needed fake residence and Social Security cards and asked Mejia if he could obtain the identification cards. Mejia responded that he could provide the documents for $225.

The government provided Guillen with a photograph, name, and birth date for Mejia to use on one set of the identification documents. When Guillen delivered the photo, Mejia introduced him to an individual named Bernardo. Guillen gave Mejia the photograph but not the payment and informed Mejia that the individual for whom Guillen was having the documents made would pay him later. Guillen was supposed to bring photographs of three different individuals but brought only one, and Mejia told him that it was not worth it for him to provide one set of identification documents.

2

Mejia told Guillen to avoid talking about the documents on the telephone, because making false identification documents was a federal crime. Guillen later met with Mejia to obtain the documents and some of the money. Mejia was upset, because Guillen did not give him photographs of the other two individuals for whom Mejia was to have identification documents made and the balance of the money Guillen was to pay Mejia.

Guillen again met with Mejia to give him another photograph and $225 for Mejia to obtain a second set of identification documents; Mejia later provided those documents to Guillen. On a subsequent occasion, Guillen brought Mejia another photograph with the payment of $225 and $150 in extra money that Mejia had requested, because Guillen needed the documents to be provided as soon as possible. Of the money paid, $100 was to compensate Mejia, who later provided the final identification documents. During Guillen's trial testimony, the government presented audio and video recordings and photographs of several of Guillen's meetings with Mejia.

Matthew Leary, a special agent for the United States Immigration and Custom Enforcement, testified that the government provided money to Guillen for the identification documents and also provided photographs, false names, birth dates, and Social Security numbers. The parties stipulated that the documents

3

provided to Guillen by Mejia were counterfeit.

Mejia testified that, before meeting Guillen, he had not been involved in providing or obtaining false identification documents for anyone. Mejia further testified that Guillen had approached him and that Guillen introduced the subject of false identification documents. Guillen had told him that he had family members who needed identification documents, and Guillen had asked Mejia if he could help him obtain those documents. Mejia initially told Guillen that he could not help him. After their first meeting, Guillen repeatedly mentioned the subject of counterfeit identification documents, and Mejia continued to say that he could not help Guillen. Mejia gave Guillen his telephone number so that they could discuss legitimate work. Mejia finally agreed to help Guillen and spoke with Bernardo Alvarado, who knew an individual, Suarli Salazar, who could assist with producing the false identification documents. Mejia had not met Salazar prior to being introduced to him by Bernardo. Mejia testified that he would not have provided fake identification documents if Guillen had not presented the idea to him. Mejia was paid $75 each time that he produced a set of false identification documents. He further testified that the only false identification documents that he had produced were those for Guillen. Mejia represented that he had provided the false identification documents to help Guillen, whom he thought was his friend.

4

During his rebuttal closing argument, the prosecutor argued that the only question was whether Mejia was entrapped. The prosecutor then read a significant portion of the judge's jury instructions:

> The defendant asserts entrapment concerning the offense charged in the indictment. The defendant is entrapped when law enforcement officers or cooperating individuals under their direction induce or persuade a defendant to commit a crime the defendant had no previous intent to commit, and the law as a matter of policy forbids a conviction in such case.
>
> However, there is no entrapment, . . . where a defendant is ready and willing to break the law, and the government merely provides what appears to be a favorable opportunity for the defendant to commit a crime. For example, it is not entrapment for a government agent to pretend to be someone else, and to offer either directly or through an informant or other decoy to engage in an unlawful transaction with the defendant.
>
> And it is not for you to evaluate the conduct of law enforcement officials or the conduct of persons acting for or at the request of law enforcement officials, including informers and cooperating witnesses, to determine if you approve or disapprove of that conduct, or to determine if you think that that conduct was moral or immoral.
>
> Except to the extent that such conduct may bear on the central issue of whether a defendant was ready and willing to break the law, and the government merely provided the defendant with what appeared to be a favorable opportunity.
>
> So a defendant would not be the victim of entrapment if you should find beyond a reasonable doubt that the defendant before contact with the government officers or cooperating individuals was ready, willing, and able to commit the crime charged in the indictment whenever opportunity was afforded, and that the government did no more than offer an opportunity.

R4 at 63-64. The prosecutor asserted that Guillen had offered Mejia an opportunity and that Mejia had taken it. The prosecutor stated that "[a] defendant

5

is predisposed and not entrapped when he admits that he's committing a federal crime but continues to act. A defendant is predisposed and not entrapped when he participates not once, not twice, but three times." Id. at 67. Mejia's counsel objected and contended that the government had misstated the law. The district judge then clarified for the jury that "[w]hat the lawyers say isn't the law. I'll tell you what the law is in a few moments, but I allow a wide latitude during closing argument." Id. The prosecutor continued:

> Three times [acting] in criminal conduct. A defendant is not entrapped, he is predisposed when he makes all the arrangements, quotes a price, sets up meeting locations, drop off locations, and handles all aspects of a criminal activity over a period of four months.
> A defendant is predisposed and not entrapped when he takes a cut of the purchase price proceeds.

Id. Mejia's counsel again objected to the government's characterization of the law, and the judge informed the jury, "[the prosecutor is] not telling you that that's the law, he's telling you that that's what his interpretation of the facts is." Id. at 68. The prosecutor added:

> A defendant is predisposed and not entrapped when he increases the price when it's required to complete a rush job.
> A defendant is predisposed and not entrapped when he never attempts to withdraw from the criminal conduct. Never says no, not even once. And continues to make deals for counterfeit documents, despite knowing his actions constitute fraud. All he had to do in this case was throw out the picture.
> . . . A defendant is predisposed and not entrapped when he makes fake documents for another person before beginning

6

negotiations with our informant.

Id. at 68-69.  The prosecutor later stated that the jury "must follow the law as instructed by the Judge."  Id. at 71.  The jury found Mejia guilty on both counts, and the trial judge sentenced him to one year and one day of imprisonment and three years of supervised release.[1]

## II. DISCUSSION

On appeal, Mejia argues that he is entitled to a new trial because the prosecutor repeatedly misstated the scope and elements of the entrapment defense by saying that a defendant is not entrapped when he (1) admits that he is committing a federal crime but continues to act, (2) participates three times in a criminal activity, (3) makes all arrangements for a criminal activity over a period of four months, (4) takes a portion of the proceeds of the crime, (5) increases the price of his illegal work for a "rush job," and (6) never attempts to withdraw from the criminal conduct.  Mejia also contends that the district judge did not provide a curative instruction.

We review de novo claims of prosecutorial misconduct, a mixed question of law and fact.  United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006), cert. denied, __ U.S. __, 127 S.Ct. 1305 (2007).  To establish prosecutorial misconduct,

---

[1] Mejia was released from custody in August 2007 and currently is serving his term of supervised release.

7

Mejia must show that the prosecutor's remarks (1) were improper and (2) prejudicially affected his substantial rights. Id. "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. When the record contains sufficient independent evidence of guilt, any error is harmless." Id. (citations omitted). "There are two elements to an entrapment claim: (1) government inducement of the crime and (2) the defendant's lack of predisposition to commit the crime before the inducement." United States v. Orisnord, 483 F.3d 1169, 1178 (11th Cir.), cert. denied, __ U.S. __, 128 S.Ct. 673 (2007).

The prosecutor's remarks in his closing argument were not improper, because they elaborated on the government's interpretation of the facts. See Eckhardt, 466 F.3d at 947. The prosecutor stated facts that were inconsistent with Mejia's claim that he was not predisposed to commit the crime. The prosecutor also read the standard for entrapment from the jury instructions and, at one point, told the jury that it was to rely on the law that the judge would provide. Moreover, the judge made it clear that the prosecutor was not stating the law when he made the contested remarks; instead, he was giving his interpretation of the facts. Consequently, there is little chance that the jury was misled by the prosecutor's

remarks.

Finally, even if the government's statements were improper, any error by the district judge in allowing those statements did not affect Mejia's substantial rights. Eckhardt, 466 F.3d at 947. Guillen's testimony and the surveillance evidence provided sufficient independent evidence from which the jurors could have concluded that Mejia was predisposed to assist in obtaining fraudulent documents based on his procurement of three separate sets of counterfeit identification documents for Guillen.

## III. CONCLUSION

Mejia has appealed his conviction for producing counterfeit, alien-registration cards and committing identification-document fraud, based on the prosecutor's remarks during his closing argument. Because the prosecutor's remarks were not improper and did not affect Mejia's substantial rights, Mejia's conviction is **AFFIRMED**.