[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10836
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 10, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-00284-CR-T-17-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FASAHA ANGAZA GREY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 10, 2009)

Before BIRCH, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant-appellant, Fasaha Angaza Grey, appeals his conviction for carrying and possessing a firearm in furtherance of a drug trafficking crime pursuant to 18 U.S.C. §924(c)(1)(A). Grey argues that the evidence was insufficient to convict him and that the prosecutor's comments during the government's summation amount to misconduct and warrant a new trial. We AFFIRM.

## I. BACKGROUND

A federal grand jury indicted Grey for (1) one count of conspiracy to possess with the intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§846 and 841(b)(1)(B) (Count One), and (2) one count of carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime in violation of 18 U.S.C. §924(c)(1)(A) (Count Two). R1-24.

Edward Quinones, a narcotics detective for the City of Tampa, testified that he helped to arrest Grey and Grey's co-defendants by posing undercover as a cocaine dealer. R3 at 31. Quinones stated that, during the transaction, he did not notice any bulges in Grey's clothing, that no one discussed whether Grey was carrying a gun, and that he did not observe Grey with a gun at any point. R4 at 18-20, 23-24, 33. Quinones said, though, that it would be unusual for someone in a drug transaction to announce that he was carrying a weapon. Id. at 38-39.

2

Anthony Tyson, a narcotics detective for the city of Tampa, also participated in Grey's arrest. R4 at 49. He saw another detective remove a holstered nine millimeter pistol from the right side of Grey's waistband immediately after the arrest. Id. at 51. The detective then handed Tyson the weapon; Tyson removed the 15-round magazine and a live bullet from the chamber, identified the gun, holster, magazine and ammunition; the government entered the gun into evidence. Id. at 52-56. Detectives found 39 additional rounds of nine millimeter ammunition inside the car in which Grey drove to the warehouse and, in a post-Miranda interview, Grey confirmed that he bought the gun three months earlier "for protection." Id. at 65-66.

At the close of the government's case, Grey moved for acquittal pursuant to Federal Rule of Criminal Procedure 29. R5 at 7-9. He argued that the government had failed to produce evidence that the firearm he carried at the time of his arrest was used "in furtherance of" the underlying drug trafficking offense, as required by statute. Id. at 8-9; see 18 U.S.C. §924(c). Grey argued that "[t]here was no evidence that he brought the firearm to the drug transaction for protection of the drugs and in furtherance of the drug offense." R5 at 8. This was demonstrated, Grey argued, by Detective Quinones's testimony that he was unaware Grey was carrying a firearm. Id. The government responded that the statute does not require

a defendant to use or brandish the weapon. Id. at 9. The court denied the motion and another for acquittal on the underlying conspiracy charge. Id. at 10.

Grey rested and renewed his previous motions for acquittal but the court renewed its denial. R5 at 11. After the government and Grey presented their initial closing arguments, the government presented its rebuttal summation, during which counsel for Grey objected:

> [PROSECUTOR]: [Grey] didn't have to brandish [the gun], he's not charged with brandishing it or actually using it. It gave him the confidence to be calm no matter what happened in this drug trafficking offense when he met these people that he didn't know anything about. That's why it's illegal.
>
> And it's not – it's irrelevant that he was a prohibitive person or not. And it's irrelevant that – whether the gun was stolen or not. It doesn't matter. It could have been, you know, his own personal gun, he could have had a license to carry anything. What made it illegal was for him to walk into that drug trafficking offense with that firearm[.] That is what made it illegal, that's what makes it a [f]ederal offense. You can't bring a gun to a drug trafficking crime. And that's the crime that is charged in this case.
>
> [DEFENSE COUNSEL]: May I object, Judge, there's no need to approach, if you could just note my objection.
>
> [THE COURT]: All right, noted for the record, I'll deal with it subsequently.
>
> [PROSECUTOR]: And for that reason, ladies and gentlemen, we believe that the evidence supports beyond a reasonable doubt, any reasonable doubt, if you use your common sense in real life experiences, that Mr. Grey brought that firearm in there to give him the confidence to commit that crime that he committed and that was the conspiracy to possess that cocaine with the intent to distribute it.

4

(Id. at 35-36). After the jury rendered its verdict of guilty on both counts, Grey renewed the objection made during the government's summation. Grey's motion for a mistrial was denied. Id. at 85. After a sentencing hearing, the district court sentenced Grey to a total of 123 months in prison. R6 at 10-11. Grey appealed.

## II. DISCUSSION

A. Sufficiency of the Evidence

We review challenges to the sufficiency of evidence de novo, viewing evidence in the light most favorable to the government and upholding a conviction unless a jury could not reasonably have found the defendant guilty. United States v. Emmanuel, 565 F.3d 1324, 1333 (11th Cir. 2009) (quotation omitted).

Section 924(c) provides enhanced penalties for carrying a firearm "during and in relation to" a federal drug trafficking crime or for "possessing" a firearm "in furtherance of" a drug trafficking crime. 18 U.S.C. §924(c)(1)(A). To prove that a gun was possessed in furtherance of a drug trafficking crime, the government must establish a nexus between the gun and the drug operation. United States v. Timmons, 283 F.3d 1246, 1253 (11th Cir. 2002). We consider several factors when determining whether a defendant possessed a firearm in furtherance of a drug trafficking crime, including: the type of drug activity, accessibility of the firearm, the type of weapon, whether the weapon was stolen, the legality of firearm

5

possession, whether the gun is loaded, proximity to the drugs, and the time and circumstances under which the gun is found. United States v. Woodard, 531 F.3d 1352, 1362 (11th Cir. 2008) (citation omitted).

Some of the Woodard factors are in Grey's favor – the gun was not stolen and Grey appears to have been its legal owner. The remainder, however, weigh against him. The drug activity was a major transaction involving $18,000 and a kilogram of cocaine. The weapon was fully loaded. It was on his person, attached to his waistband, easy for him to reach and close to the drugs and the money that were involved in the transaction. Viewing the evidence in the light most favorable to the government, a reasonable factfinder could find that the gun facilitated the offense by giving Grey confidence and security and that he therefore possessed it in furtherance of the drug trafficking crime. Thus, there is sufficient evidence to support Grey's conviction under the statute.

B. Prosecutorial Misconduct

Ordinarily, we review allegations of prosecutorial misconduct de novo. United States v. Merrill, 513 F.3d 1293, 1306 (11th Cir. 2008) (citation omitted). To constitute prosecutorial misconduct, a prosecutor's remarks must be improper and must prejudicially affect the substantial rights of the defendant. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006) (citation omitted).

6

Considered in context, the prosecutor's remarks were not improper. Grey correctly argues that the mere possession of a firearm during a drug trafficking offense is, without more, insufficient for a conviction under §924(c). Before the objected-to statement, though, the prosecutor had said that the gun "gave [Grey] the confidence to be calm" in a drug deal with persons unfamiliar to him. R5 at 35-36. After the objection, the prosecutor reiterated that point. In context, the objected-to remarks cannot be considered part of an improper effort to mislead the jury about what the offense required. The government made clear how its argument fit within the requirements of the statute and hinged upon the promotion of a feeling of confidence and security that furthered the offense.

Moreover, even if the government's remarks were improper, Grey cannot satisfy the second prong of prosecutorial misconduct. The record contains sufficient evidence that Grey violated §924(c)(1) when he carried a loaded firearm to a drug transaction. In the face of such independent evidence of guilt, "any error is harmless." Eckhardt, 466 F.3d at 947. The appellee's prosecutorial misconduct argument fails both prongs of the de novo standard.

### III. CONCLUSION

Grey appeals on the twin bases that there was insufficient evidence to convict him under §924(c)(1) and that the prosecution committed misconduct

7

requiring a new trial. As we have explained, the conviction was proper and the prosecution's remarks did not amount to misconduct. Accordingly, judgment of the district court is **AFFIRMED.**