[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10798
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cr-00414-WSD-AJB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL ASHER,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 6, 2014)

Before CARNES, Chief Judge, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Michael Asher appeals the district court's denial of his motion for a new trial following his convictions on two counts of knowingly distributing child pornography and one count of knowingly receiving child pornography. See 18 U.S.C. § 2252(a)(2), (b).  He contends, as he did in his underlying motion, that he is entitled to new trial based on the government's alleged violations of the expert disclosure requirements set forth in Federal Rule of Criminal Procedure 16(a)(1)(G), prosecutorial misconduct during closing arguments, ineffective assistance of trial counsel, and the cumulative impact of these errors.

## I. FACTS

On December 1, 2008, Special Agent John Brooke Donahue of the Federal Bureau of Investigation used the peer-to-peer file sharing program GigaTribe to download 174 images of child pornography from fellow GigaTribe user "Mangaman1999."  The internet protocol (IP) address for Mangaman1999 was assigned to Michael Asher's home in Conyers, Georgia.  At the time of Agent Donahue's undercover GigaTribe session, Asher was logged into the virtual private network (VPN) of his employer, AT&T, with his username, personal identification number, and employer-issued key fob.  FBI agents later executed a search warrant for Asher's residence and seized eight computers from the home, which were identified during discovery and at trial as QAT01 through QAT08.

2

Forensic computer examiners with the FBI made copies of the seized computers' hard drives and scoured them for child pornography using a specialized software program, Forensic Tool Kit (FTK). They then bookmarked any files of interest and generated FTK reports documenting the results of their searches. The examiners unearthed over 1500 images and 80 videos of child pornography on computers QAT03 and QAT04, both of which were registered to Asher and found in his home office. They also found sophisticated "Eraser" software designed to permanently delete information from a computer's hard drive. One of those computers (QAT03) had a single password-protected user profile, while the other (QAT04) had a password-protected profile labelled "masher," which contained logs of conversations conducted in internet chat rooms related to child pornography. The examiners discovered that Asher had sent a work-related email from QAT03 within a half hour of child pornography being downloaded onto it.

On Asher's work laptop, QAT02, which was also found in his home office, forensic examiners found several file names in the computer registry, but not the files themselves, identical to those found on QAT03 and QAT04 and downloaded by Agent Donahue. The examiners did not uncover any child pornography on the computers found elsewhere in Asher's home, including his 17-year-old stepson's computer, QAT08.

## II. PROCEDURAL HISTORY

3

Asher was indicted on two counts of distributing child pornography, one count of receiving child pornography, and one count of possessing child pornography. During discovery, the government notified him that it intended to call one of its forensic examiners, Orlando Figueroa, to testify about the analysis of Asher's computers and the child pornography found on them. It also provided Asher with copies of its FTK reports for the three computers that were found to contain files associated with child pornography. Those reports contained bookmarked file searches for Asher's work laptop, including one titled "GigaTribe UC files," which indicated that 15 file names found on that computer matched the names of files downloaded by Agent Donahue.

Convinced that the government's disclosures did not satisfy the requirements of Federal Rule of Criminal Procedure 16(a)(1)(G), Asher filed a motion to compel the government to prepare a written summary of all the expert testimony that it intended to introduce at trial. In response, the government supplemented its earlier disclosures with a five-page report summarizing the expected testimony of its experts. The supplement indicated that forensic examiners Figueroa and Cyrus Riley searched Asher's computers for files related to child pornography, GigaTribe, and Mangaman1999; bookmarked the results of those searches in FTK reports; and that they would testify "that numerous files bearing [the] same file names [as] images downloaded by [Agent] Donahue using GigaTribe were deleted

4

from [Asher's] computers." Despite these disclosures, the district court found that the government had not fully complied with the requirements of Rule 16(a)(1)(G) and therefore ordered it to provide Asher with a written summary describing its expert witnesses' opinions and the bases for those opinions. The court's order stated that it would not consider or admit into evidence any expert opinion that was "not part of [the] written summary."

The government then provided Asher with a 45-page written summary of its expected expert testimony. The summary stated that the government's forensic examiners would testify that they searched the hard drives of the seized computers for child pornography and found such materials on QAT03 and QAT04, but not on QAT01, QAT05, QAT06, QAT07, or QAT08. The summary also stated that forensic examiner Riley would testify that he searched Asher's work laptop for file names associated with Agent Donahue's undercover GigaTribe session and bookmarked the results in an FTK report, which was separately provided to Asher. The FTK report for Asher's work computer included four bookmarked file searches, one of which indicated that 15 file names found on that computer matched the names of child pornography that Agent Donahue had downloaded.

At trial, the government called forensic examiner Riley as its chief expert witness. Riley testified that QAT03 and QAT04, both of which were registered to Asher, contained child pornography and that someone using QAT04 under the

name "masher" had accessed internet chat rooms related to child pornography.  He testified that his analysis of Asher's work laptop uncovered numerous file names, but not the files themselves, matching child pornography downloaded by Agent Donahue, and that the presence of the file names indicated that the actual files were "on the computer at some point."  Asher did not object to any portion of Riley's testimony, nor did he object to the government's introduction of exhibits detailing the results of the forensic examination of QAT03.  Those exhibits showed that several pornographic files on QAT03 had last been modified in 2003, though not necessarily created or downloaded onto Asher's computer at that time.  Riley did not mention the 2003 modification dates in his trial testimony, though he did testify that QAT03's hard drive was not manufactured until 2004.

Asher's defense at trial was that he was unaware of the child pornography found on the computers seized from his home, particularly QAT03 and QAT04, and that his teenage stepson or his stepson's friends were responsible for those materials.  Asher called his own expert witness, James Persinger, who explained that a user on Asher's stepson's computer could wirelessly access and download files onto QAT03 and QAT04, and that someone using that computer had previewed a series of adult videos and searched for terms related to child pornography.  Persinger did not, however, find any child pornography or related file names on the stepson's computer, and he testified that the internet searches for

6

child pornography could have occurred as early as 2004, when the stepson was only 12 or 13 years old. On cross-examination, Persinger acknowledged that he received a fee of $2,200 per day and over $20,000 total for his work on the case.

During closing arguments, the government sought to counter Asher's defense that his stepson or someone else was responsible for the illicit materials discovered on QAT03 and QAT04. The prosecutor argued that child pornography file names were found on Asher's password-protected work laptop, that child pornography had been not been found on the stepson's computer, and that the government's exhibits showed that at least one file discovered on QAT03 "date[d] back to 2003," when the stepson would have only been 10, 11, or 12 years old. Asher responded that the government failed to seize evidence from his stepson's bedroom that might have contained or been indicative of an interest in child pornography. In rebuttal, the government stated that it had "no axe to grind with Mr. Asher," that the jury "wouldn't be here today" if child pornography had been found on his stepson's computer, and that it was only "trying to find the person responsible for the child pornography" and "the evidence point[ed] to the defendant." The government also admonished the jury to question the testimony of the defense's expert witness in light of the fees he was receiving for his services.

The jury found Asher guilty on all four counts charged in the indictment but the count for possession of child pornography was merged into the count for

7

receipt of child pornography, with the result that he was actually convicted on three counts.  Asher, through new counsel, then filed a motion for a new trial, contending that:  (1) the government's Rule 16(a)(1)(G) summary failed to disclose that forensic examiner Riley would testify that file names associated with child pornography were found on his work laptop and that this meant that the actual files once existed on that computer, and failed to disclose that there were child pornography files that had been modified as early as 2003; and (2) the government improperly stated during closing arguments that child pornography files dated back to 2003, that it was merely attempting to find the person responsible for the child pornography based on the evidence, and that the defense's expert was receiving a daily fee of $2,200.  Alternatively, Asher claimed that he was entitled to a new trial because his trial counsel was ineffective for failing to call certain witnesses or present exculpatory evidence, and by waiving a Daubert hearing that would have alerted counsel to the fact that the government intended to rely on evidence not adequately disclosed under Rule 16(a)(1)(G).

The district court denied Asher's motion for a new trial.  The court found that the government's written summary, when coupled with the FTK reports provided to the defense, adequately advised Asher that the government intended to present expert testimony about the forensic examination of his work laptop, which revealed that 15 files name found on that computer matched files downloaded by

Agent Donahue.  The court also found that the government's reference to the 2003 modification date in closing argument did not violate the expert disclosure provisions of Rule 16(a)(1)(G) because the government's expert witness did not testify about data from 2003, and that data was provided in discovery anyway. And while the court found that the government had violated Rule 16(a)(1)(G) by failing to disclose forensic examiner Riley's opinion that the presence of file names on Asher's work laptop indicated that the files themselves had once been on that computer, it concluded that the violation did not warrant a new trial because it did not substantially prejudice Asher.  The court emphasized that the government's pretrial disclosures adequately notified Asher that incriminating file names were found on his work computer and that he would have to confront that evidence at trial, as well as the common-sense inference that the existence of the file names suggested that the files themselves had once been on that computer.

Turning to Asher's claim of prosecutorial misconduct during closing arguments, the court found that the challenged remarks, even if improper, did not prejudice Asher's substantial rights given the "compelling evidence" of his guilt. For similar reasons, the court found that Asher was not prejudiced by trial counsel's alleged failures.  The court later sentenced Asher to concurrent terms of 155 months imprisonment on the three surviving counts of conviction.  Asher now appeals the denial of his motion for a new trial.

### III. DISCUSSION

We ordinarily review a district court's denial of a motion for a new trial for an abuse of discretion.  United States v. Hernandez, 433 F.3d 1328, 1332 (11th Cir. 2005).  But where the grounds for the motion were not objected to at trial, our review is limited to plain error.  See United States v. Pendergraft, 297 F.3d 1198, 1211 (11th Cir. 2002); United States v. Nixon, 918 F.2d 895, 904–05 (11th Cir. 1999).  Under plain error review, a defendant must establish that "(1) an error occurred, (2) the error was plain, (3) the error affected substantial rights in that it was prejudicial and not harmless, and (4) the error seriously affected the fairness, integrity, or public reputation of [the] judicial proceeding."  United States v. Perez, 661 F.3d 568, 583 (11th Cir. 2011).  The prejudice prong requires a defendant to prove that, but for the claimed error, there was a reasonable probability of a different result.  United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005).

### A. The Government's Compliance with Rule 16(a)(1)(G)

Asher contends that he is entitled to a new trial because the government violated Rule 16(a)(1)(G), as well as the district court's discovery order, by failing to disclose three things in its written summary of expected expert testimony: (1) that file names associated with child pornography were found on his work computer; (2) that this meant that the corresponding files were on that computer at some point in time; and (3) that pornographic files found on QAT03 had been

10

modified as early as 2003.  Asher claims that he was "sand-bagged" with this evidence at trial and that the discovery violations prejudiced his ability to adequately confront it, prepare a defense consistent with it, and consider whether to plead guilty in light of it.

Federal Rule of Criminal Procedure 16(a)(1)(G) provides that "[a]t the defendant's request, the government must give to the defendant a written summary of any [expert] testimony that the government intends to use . . . during its case-in-chief at trial," which must "describe the [expert] witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Typically, a violation of Rule 16 will not warrant a new trial unless it prejudiced the defendant by "adversely affect[ing] [his] ability to present a defense."  United States v. Chastain, 198 F.3d 1338, 1348 (11th Cir. 1999); see also United States v. Tinoco, 304 F.3d 1088, 1119 (11th Cir. 2002).  But because Asher did not raise a Rule 16 objection at trial to the testimony of the government's expert witness or to its closing argument, he must satisfy each of the plain error requirements, which includes demonstrating that there was a reasonable probability of a different trial outcome but for the claimed violations.  He has not met that burden.

The government's written summary of expected expert testimony stated that forensic analysis of the eight computers seized from Asher's home revealed child pornography on two of those computers (QAT03 and QAT04) and no pornography

11

on five of the remaining six computers (QAT01, QAT05, QAT06, QAT07, and QAT08). The summary also stated that forensic examiner Riley would testify that he searched Asher's work laptop for files associated with Agent Donahue's undercover GigaTribe session and bookmarked the results in an FTK report. That report, which was separately provided to Asher during discovery as well as in connection with the government's written summary, showed that 15 file names found in the computer registry of the work laptop matched files that had been downloaded by Agent Donahue.

As Asher points out, the government's written summary did not explicitly state that Riley would testify that he found child pornography file names on the work laptop and that this meant that the actual files had been located on that computer at some point. But even assuming that these omissions plainly violated the requirements of Rule 16(a)(1)(G), Asher has not shown that they prejudiced his substantial rights. The totality of the government's pretrial disclosures, including its written summary and FTK reports, were sufficient to put Asher on notice that child pornography file names had been found in the registry of his password-protected work laptop and that he needed to confront that evidence at trial. And as the district court noted, the fact that file names associated with Agent Donahue's GigaTribe session were found on the work computer would have led even a lay person to infer, whether rightly or wrongly, that the files themselves had once been

on that computer and deleted.  That inference would have been bolstered by the fact that Eraser software, which enabled the permanent deletion of files, was found on the two other computers, QAT03 and QAT04, found in Asher's home office.

For these reasons, Asher cannot show that any violations of Rule 16(b)(1)(G) adversely affected his ability to present a defense, let alone that there is a reasonable probability he would have been acquitted but for the discovery violations.  That is especially true given the substantial evidence of guilt presented by the government.  The government's evidence showed that Agent Donahue downloaded 174 files of child pornography from the IP address assigned to Asher's residence; that three computers registered to Asher and located in his home office, including his password-protected work laptop, contained files names or actual files corresponding to those downloaded by Agent Donahue; that Asher was signed into his employer's VPN network at the time of the undercover GigaTribe session; that Asher sent a work-related email from one of those three computers within a half hour of child pornography being downloaded onto it; and that no files or names of files relating to child pornography were found on his stepson's computer.  While Asher presented his own expert testimony that someone using his stepson's computer could wirelessly access and download files onto QAT03 and QAT04, that testimony does not render the government's evidence of guilt any less substantial, particularly in light of the incriminating file

13

names found on his password-protected work laptop.  And the fact that Asher and his attorney did not — or could not — effectively counter the incriminating evidence found on his work laptop cannot be blamed on whatever inadequacies existed in the government's Rule 16(a)(1)(G) summary.

As for the 2003 file dates mentioned by the government during closing arguments, the omission of those dates from the government's written summary did not violate Rule 16(a)(1)(G) because they were not the subject of any expert testimony nor did they form the basis for any such testimony.  Instead, those dates were strictly contained in the government's exhibits documenting the forensic examination of QAT03, which were given to the defense and admitted at trial without objection.  By its very terms, Rule 16(a)(1)(G) only requires the government's written summary to disclose the substance and basis of "any [expert] testimony that the government intends to use" at trial, not the substance of every piece of evidence within its possession.  See Fed. R. Crim. P. 16(a)(1)(G).

## B. Prosecutorial Misconduct at Closing

Asher next argues that he is entitled to a new trial based on three remarks made by the prosecution during closing arguments, each of which he contends was improper and prejudicially affected his substantial rights.  First, he challenges the prosecutor's statement that at least one child pornography file found on his computers dated back to 2003, after the government had told defense counsel and

the trial court that evidence of child pornography dated back to only 2005. Second, he contends that the government "improperly bolstered [its] case" when it stated that it had "no axe to grind" with Asher, was only "trying to find the person responsible for the child pornography" based on the evidence, and that the jury would not be there if it had found child pornography on the stepson's computer. Finally, Asher contends that the prosecution's reference to how much the defense expert was being paid for his services improperly "insinuated that the defense paid its expert to make up a defense."

A prosecutor's comments warrant a new trial only where they were both improper and prejudicial to the defendant's substantial rights. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006). A prosecutor's remarks are improper if they attempt to bolster the credibility of a witness based on the government's reputation, allude to evidence not formally before the jury, or are calculated to mislead the jury or inflame its passions. United States v. Lopez, 590 F.3d 1238, 1256 (11th Cir. 2006). Even improper comments do not necessitate a new trial unless "a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." Eckhardt, 590 F.3d at 947. The prejudicial impact of improper remarks "must be considered in the context of the entire trial," including the strength of the government's case and any curative instructions given by the trial court. Lopez, 590 F.3d at 1256. Because "improper

statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered," we will only grant relief in the presence of a curative instruction "if the evidence is so prejudicial as to be incurable by that measure." Id. (quotation marks omitted).

Because Asher did not object at the time of trial to the first and third remarks that he now challenges, his claim of prosecutorial misconduct based on those statements is reviewed only for plain error. See United States v. Rodgers, 981 F.2d 497, 498 (11th Cir. 1993); see also Pendergraft, 297 F.3d at 1211. Although the prejudice prong of plain error review is the same as for properly preserved claims of prosecutorial misconduct, Asher must show not only that the unobjected-to statements were improper, but also that they were plainly so "under controlling precedent" from this Court or the United States Supreme Court. United States v. Schmitz, 634 F.3d 1247, 1270–71 (11th Cir. 2011) (quotation marks omitted).

Asher has not demonstrated that the prosecutor's reference to child pornography files dating back to 2003 was improper, let alone plainly improper under binding precedent. That statement was supported by the evidence admitted at trial — namely, exhibits showing that several child pornography files found on QAT03 were last modified in 2003. While the prosecutor may have made representations to defense counsel and the district court that he believed that no

child pornography predated 2005, the exhibits admitted at trial and disclosed to the defense indicated that several files had 2003 modification dates.

Likewise, we find nothing improper, let alone plainly improper, about the prosecution asking the jury to consider the testimony of the defense's expert, James Persinger, in light of the $2,200 daily fee he was receiving for his services. While a prosecutor may not vouch for the credibility of a witness based on the government's reputation or evidence not before the jury, see Lopez, 590 F.3d at 1256, we have recognized that the prosecution is generally entitled to argue "to the jury the credibility of the government and defense witnesses" under the facts presented, United States v. Eley, 723 F.2d 1522, 1526 (11th Cir. 1984). Persinger testified on cross-examination that he was being paid $2,200 per day for his services and Asher has not pointed to any binding precedent establishing that commenting on an expert's financial incentives for testifying is improper.

Asher did object to the government's statements concerning its motivation for pursuing a case him instead of his stepson, so our usual review for an abuse of discretion applies. The district court found that these remarks, even if improper, did not prejudice Asher's substantial rights given the "compelling evidence" against him, as well as its instruction to the jury that counsel's arguments are not evidence and that the jury should confine its decision to the evidence presented. The court's conclusion that these statements, even if improper, did not warrant a

17

new trial was not an abuse of discretion.  Given the strength of the government's case against Asher, which we have already discussed, and the district court's instruction to the jury that it should consider only the evidence, the court did not commit a clear error of judgment in determining that there is no reasonable probability that the outcome of the trial would have been different but for the government's statements about its motivations for prosecuting Asher.  See Weatherly v. Ala. State Univ., 728 F.3d 1263, 1270 (11th Cir. 2013) ("When employing an abuse of discretion standard, we must affirm unless we determine that the district court has made a clear error of judgment, or has applied an incorrect legal standard.") (quotation marks and ellipsis omitted).

## C. Ineffective Assistance of Trial Counsel

Asher also contends that he is entitled to a new trial because his trial counsel provided ineffective assistance in failing to present exculpatory evidence and call certain witnesses in his defense, as well as in failing to object to the introduction of evidence that the government allegedly failed to disclose under Rule 16(a)(1)(G). Specifically, he faults trial counsel for failing to call his wife and AT&T supervisor as witnesses, failing to subpoena his cellphone records and an official from his stepson's school, failing to adequately counter the testimony of the government's expert witness, failing to introduce evidence of his good character, and waiving a

18

Daubert hearing that would have alerted counsel to the fact that the government intended to offer evidence in violation of Rule 16.

Although Asher asserted his ineffective-assistance claim in his motion for a new trial, and the district court considered and rejected that claim on the merits, we decline to consider it here because the record is not sufficiently developed for us to do so. As the Supreme Court has observed, "a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance" — even where "the record contains some indication of deficiencies in counsel's performance" — because trial records are "not developed precisely for the object of litigating or preserving [such claims] and thus often incomplete or inadequate for this purpose." Massaro v. United States, 538 U.S. 500, 504–05, 123 S.Ct. 1690, 1694 (2003). For example, "[i]f the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it," meaning that an "appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." Id. at 505, 123 S.Ct. at 1694. And if the alleged error is one of omission, "[t]he trial record may contain no evidence [of those alleged errors], much less the reasons underlying them." Id.

For these reasons, we have repeatedly cautioned that we will not consider an ineffective-assistance claim on direct appeal where the district court did not

19

develop a sufficient factual record for deciding it.  See e.g., United States v. Patterson, 595 F.3d 1324, 1328 (11th Cir. 2010).  The record in this case is not sufficiently developed to decide Asher's claim.  The bulk of the evidence that he contends counsel should have introduced or emphasized at trial is not in the record.  Nor does the record show the extent of counsel's preparations for trial or the reasons counsel may have had for acting as he did.  Should Asher choose to pursue his claim further, he can raise it in a § 2255 motion to vacate his sentence.

### D.  Cumulative Error

Finally, Asher contends that the cumulative impact of all of the errors he has asserted on appeal warrants a new trial.  Under the cumulative error doctrine, a defendant can obtain a reversal "where an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors)" yields "a denial of the constitutional right to a fair trial."  United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (quotation marks omitted).  "The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error — courts look to see whether the defendant's substantial rights were affected."  Id. (quotation marks omitted).

As we have explained, none of the errors alleged by Asher, if they were errors at all, individually affected his substantial rights.  And we are not persuaded that the cumulative effect of those alleged errors was so harmful as to deprive

Asher of a fair trial, particularly in light of the substantial evidence of guilt presented by the government.

## III.  CONCLUSION

For these reasons, we affirm the district court's denial of Asher's motion for a new trial.

**AFFIRMED.**