[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11716
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 21, 2011
JOHN LEY
CLERK

D.C. Docket No. 4:08-cr-10017-JLK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEXIS DE LA CRUZ SUAREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 21, 2011)

Before BARKETT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

After a jury trial, Alexis De La Cruz Suarez appeals his convictions on

fifteen counts of encouraging and inducing aliens to enter and reside in the United

States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv).[1]  After review, we affirm.

## I.  BACKGROUND

### A.    Pretrial Motion to Take Foreign Depositions

The U.S. Coast Guard found De La Cruz Suarez driving a boat that contained Cuban nationals toward the United States.  After indictment, De La Cruz Suarez filed a motion for authorization to take witness depositions in Cuba.

De La Cruz Suarez attached to his motion six letters purportedly written by six passengers on his boat.  The letters stated that each individual had attempted to come to the United States independent of De La Cruz Suarez.  The individuals stated that on March 7, 2008, they left Cuba on a raft.  After the raft was damaged, they were stranded without food or water on Cay Sal Bank in the Bahamas.  De La Cruz Suarez came to their rescue and told them that he would turn them over to the U.S. Coast Guard.

The district court granted De La Cruz Suarez's pre-trial motion.  De La Cruz Suarez took videotaped depositions of four of the six passengers.

### B.    Voir Dire

During voir dire, the district court explained the charges against De La Cruz Suarez to the panel of prospective jurors and advised them that some of the

---

[1]De La Cruz Suarez does not raise issues as to his sentences.

2

testimony would be videotaped. Without objection, the district court stated his own preference for live testimony, but told the prospective jurors that videotaped testimony was now "routine," and that whether testimony was live or videotaped did not matter and should be treated the same for purposes of evaluating credibility and applying the standard of proof.

## C.     Government's Evidence

At trial, the government produced evidence that, in the evening of March 11, 2008, a U.S. Coast Guard cutter was patrolling the Cay Sal Bank area between the United States and Cuba. The cutter discovered De La Cruz Suarez driving a boat toward Florida without running lights. De La Cruz was using a satellite phone. The boat contained eighteen passengers who did not have documentation to enter the United States.

On De La Cruz Suarez's boat, the Coast Guard boarding team found a satellite phone bag with a SIM card and a battery, but not a satellite phone. They also found large amounts of food and water and a GPS unit. When questioned by a boarding officer, De La Cruz Suarez stated that he had sailed from Black Point Marina to Cuba to pick up his family, that they had stopped at Cay Sal Bank to rest and refuel and that they were heading back to the United States. The GPS unit indicated that the boat had been in Biscayne Bay, Miami on the evening of March

11, 2008 and near Key West on the morning of March 12, 2008. The GPS contained two preprogrammed routes from Biscayne Bay to Matanzas, Cuba.

One passenger, Arquina Marrero, a Cuban native, testified that on March 11, 2008, she and approximately ten or twelve other people met on the outskirts of Mantanzas and walked for awhile. The next morning, a "modern" boat arrived, which they boarded to go to the United States. The boat departed and traveled until nighttime, when it was stopped by the U.S. Coast Guard. Marrero and the other passengers were transferred to the Coast Guard cutter and eventually taken back to Cuba.

Chief Petty Officer Mark Szoboszlay was involved in the March 12, 2008 interdiction of De La Cruz Suarez's boat. Szoboszlay testified he first encountered De La Cruz Suarez on February 21, 2007 when a Coast Guard cutter followed De La Cruz Suarez's boat after it left Cuban waters and pursued it for over three hours before it stopped. That time, De La Cruz Suarez had thirty-four aliens on board. The government introduced De La Cruz Suarez's prior conviction for alien smuggling arising out of that incident.

## D. Out-of Turn Rebuttal Evidence

During its case in chief, the government indicated that it intended to introduce a letter that was (1) attached to De La Cruz Suarez's pretrial motion and

4

(2) purportedly written by Diana Azcui Fabelo, one of the passengers in De La Cruz Suarez's boat. The government intended to present Fabelo's testimony that she did not write the letter.

Defense counsel objected to the letter, stating, "I don't know the legal basis by which it's admissible." The district court confirmed that De La Cruz Suarez intended to play the four videotaped depositions at trial to support his defense that he merely rescued the stranded aliens. The district court overruled De La Cruz Suarez's objection, concluding that the letter was proper rebuttal evidence.

After resting, the government asked to call Fabelo, its rebuttal witness, out of turn. Defense counsel indicated that he had no objection and preferred to have the rebuttal witness testify first rather than break up the videotaped deposition testimony. Consequently, the district court granted the government's request.

Passenger Fabelo then testified that, on March 12, 2008, as part of her plan to enter the United States, she went to a beach in Matanzas, Cuba. Fabelo and other people boarded a white boat with two motors. The boat proceeded out to sea until it was intercepted by the U.S. Coast Guard. The government showed Fabelo a letter, which she denied writing. Fabelo said that the letter was not in her handwriting and misspelled her last name.

When the government moved to admit the letter, De La Cruz Suarez

5

objected, citing a lack of foundation "in addition to the grounds elicited before." After the district court confirmed that De La Cruz Suarez had filed the letter with his pre-trial motion, defense counsel conceded that "it would be admissible" to determine whether Fabelo wrote it, but maintained that the letter's contents were irrelevant. The district court responded that "the contents are very relevant," and admitted the letter. Fabelo then testified that the letter did not accurately report the events that transpired on March 12, 2008 and that De La Cruz Suarez did not rescue her at sea.

**E.     Defendant's Evidence**

De La Cruz Suarez presented the videotaped deposition testimony of Alfredo De La Cruz Rodriguez, one of the boat's passengers and De La Cruz Suarez's father. According to Rodriguez, he did not discuss with De La Cruz Suarez his plans to try to leave Cuba for the United States. In March 2008, Rodriguez met his brother, a daughter-in-law and a granddaughter, and they traveled with a group of other people to the shore in Matanzas. The group boarded a "rustic craft," or homemade raft, with one engine and sailed until the next morning, when the craft began taking on water. Around noon, the passengers disembarked on some rocks in Cay Sal Bank.

The following day some passengers used cell phones to call family

members. One of Rodriguez's family members reached the mother of Defendant De La Cruz Suarez. Rodriguez told her they were stranded on a rock rift. Late that afternoon, De La Cruz Suarez arrived in a boat. De La Cruz Suarez loaded the aliens on the boat, but told them he had to hand them over to U.S. authorities. Shortly after they started, the U.S. Coast Guard intercepted De La Cruz Suarez's boat. On cross-examination, Rodriguez stated that he had written one of the letters De La Cruz Suarez attached to his pre-trial motion.

Another passenger, Yandri Oriheula Alfonso, testified at trial. Alfonso substantially repeated the rescue narrative testified to by Rodriguez. Alfonso said that he wrote one of the letters attached to De La Cruz Suarez's pre-trial motion.

After Alfonso testified, the district court explained to the jury that he had two hearings in other cases to conduct in chambers. After the parties agreed to the judge's absence, the judge excused himself while the remaining videotaped depositions were played for the jury. In the videotaped depositions, the boat passengers said that De La Cruz Suarez rescued them after they were stranded on some rocks. On cross-examination, each passenger testified that he or she had written one of the letters attached to De La Cruz Suarez's pre-trial motion. The government questioned each witness about any inconsistencies between their testimony and the contents of their letter. After the defense rested, the district

court admitted De La Cruz Suarez's pre-trial motion with the attached letters.

**F.     Closing Argument and Motion for a Mistrial**

During closing arguments, the government stated to the jury:

> We know that the Defendant had the intention of taking these people to the United States. How else do we know that? Well, you heard that back in February of 2007, the Defendant did the exact same thing. That time he had 34 Cuban migrants aboard his go-fast vessel. He was heading up towards the United States.

De La Cruz Suarez objected, was overruled, and the government continued, "What does that show? It shows the Defendant has the knowledge, the know-how, the experience to be able to conduct this activity. He knew how to get down to Cuba. And it shows his intention. It shows his intent." After closing argument, De La Cruz Suarez renewed his objection to the government's use of his prior conviction and moved for a mistrial. The district court denied the motion.

The jury found De La Cruz Suarez guilty of fifteen counts of alien smuggling.[2] The district court imposed a total 82-month sentence. De La Cruz Suarez filed this appeal.

## II. DISCUSSION

**A.     Admission of Pretrial Motion and Letters**

_____

[2]At the beginning of trial, the district court dismissed three counts of the indictment at the government's request.

De La Cruz Suarez argues that the district court erred when it admitted at trial a copy of his motion for authorization to take foreign depositions and the six attached letters. De La Cruz Suarez argues that the motion and letters were highly prejudicial and should have been excluded under Federal Rule of Evidence 403.[3]

Relevant evidence ordinarily is admissible. See Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Nonetheless, under Rule 403, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."

---

[3]Ordinarily, we review a district court's admission of evidence for an abuse of discretion. United States v. Suarez, 601 F.3d 1202, 1215 (11th Cir.), cert. denied, 130 S. Ct. 3532 (2010). However, in the district court, De La Cruz Suarez objected to this evidence based on relevance and lack of foundation. De La Cruz Suarez did not raise a Rule 403 objection. Therefore, our review is only for plain error. See United States v. Walther, 867 F.2d 1334, 1343 (11th Cir. 1989) (reviewing for plain error whether admission of testimony was unduly prejudicial under Rule 403 where defendant objected at trial only on grounds of relevancy and hearsay). Under plain error review, we may reverse only if: (1) there was error, (2) that was plain, (3) that affected the defendant's substantial rights and (4) seriously affected the fairness of the judicial proceedings. United States v. Jernigan, 341 F.3d 1273, 1289 (11th Cir. 2003). We add, however, that De La Cruz Suarez has not shown the district court abused its discretion under Rule 403 in any event.

Old Chief v. United States, 519 U.S. 172, 180, 117 S. Ct. 644, 650 (1997). The question is "not whether the evidence itself is prejudicial, but rather whether its probative value is outweighed by its prejudicial effect. Consequently, the balancing test prescribed by Rule 403 militates in favor of admissibility." United States v. Wright, 392 F.3d 1269, 1276 (11th Cir. 2004) (citation omitted).

Here, the letters were highly probative of the rescue narrative that was the basis of De La Cruz Suarez's defense and, to the extent there were inconsistencies, the credibility of the witnesses who recounted it in their live or videotaped testimony. Additionally, evidence of the falsity of the letter purportedly written by Fabelo further called into question the credibility of De La Cruz Suarez's witnesses and tended to show that De La Cruz Suarez intended to bring aliens from Cuba into the United States.

De La Cruz Suarez argues that the letters were prejudicial because they tended to undermine his defense.[4] However, this type of prejudice is not unfair. As we have explained, "[t]he nature of the government's evidence against a defendant is meant to be prejudicial." Id.; see also United States v. King, 713 F.2d

_____

[4]De La Cruz Suarez also argues that the government's presentation of Fabelo's rebuttal testimony before he put on his case hindered his defense. We do not address this alleged error because it was invited by De La Cruz Suarez when his counsel told the district court that he had no objection to the government presenting Fabelo's testimony out of turn and preferred that it be presented before he began his defense. See United States v. Silvestri, 409 F.3d 1311, 1327 (11th Cir. 2005) (stating that a party cannot challenge an error or ruling invited by that party).

627, 631 (11th Cir. 1983) ("[I]n a criminal trial relevant evidence is inherently prejudicial; it is only when <u>unfair</u> prejudice <u>substantially</u> outweighs probative value that the rule permits exclusion.").  Under the circumstances, we cannot say that the probative value of the evidence was substantially outweighed by the risk of unfair prejudice.  Accordingly, the district court did not err in admitting the motion and letters.

**B.  District Court's Comments During Voir Dire**

De La Cruz Suarez contends the district court plainly erred when, during voir dire, it expressed a preference for live testimony over videotaped testimony.[5] De La Cruz Suarez specifically objects to the district court's statement that "it's just my predilection.  I'd rather you heard people instead of movies, but they can't help it sometimes; there it is."

We will reverse a district court because of statements it made during trial only if the comments were prejudicial and "had a clear effect on the jury and amounted to the denial of a fair trial."  <u>United States v. Tampas</u>, 493 F.3d 1291, 1303 (11th Cir. 2007).  Three factors this Court has identified as "weigh[ing] in favor of a finding that the comments of a trial judge were not reversible error," are

_____

[5]De La Cruz Suarez concedes he did not object to this comment in the district court and that plain error review applies.

11

that (1) the comments were brief relative to the overall trial; (2) the comments were directed at defense counsel rather than the jury; and (3) the court advised the jury to "disregard any intimation by the Court relating to the facts of the case." United States v. Morales, 868 F.2d 1562, 1576 (11th Cir. 1989).

Here, although stating his personal preference for live testimony, the district court explicitly told the jury that videotaped testimony was "routine," that it did not matter whether testimony was live or videotaped and that videotaped testimony should not be "h[e]ld against anybody." The district court further explained that the jury should evaluate the witnesses credibility the same regardless of whether it was live or videotaped.

When the district court's comment is taken in context, it is clear the district court effectively disavowed any intimation that videotaped testimony was legally insufficient or in some way inferior to live testimony and invited the jury to disregard his earlier comment. The challenged comment was brief, made before trial began and was not repeated during trial.[6] Although the statement was made to prospective jurors, De La Cruz Suarez has not shown that it had any effect,

---

[6]We do not address De La Cruz Suarez's claim that the district court compounded the prejudice by leaving the courtroom while some of the videotaped testimony was played to the jury. Because De La Cruz Suarez expressly consented to the district court's absence, he may not now complain about it on appeal. See Silvestri, 409 F.3d at 1327.

12

much less a clear effect, on the jury.  We find no plain error in the district court's statement.

## C.     Prosecutor's Remarks During Closing Argument

De La Cruz Suarez contends that during closing argument the prosecutor urged the jury to find that De La Cruz Suarez had a propensity to smuggle aliens based on his prior alien smuggling conviction.[7]

For a prosecutor's remarks to constitute prosecutorial misconduct, they must (1) be improper, and (2) prejudicially affect the defendant's substantial rights. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006) (quotation marks omitted).  "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different."  Id.

Here, the prosecutor did not use De La Cruz Suarez's prior alien smuggling as evidence that he encouraged or induced aliens to enter the United States on March 12, 2008.  For this element, the prosecutor pointed to the testimony of U.S. Coast Guard officers who intercepted De La Cruz Suarez on March 12, 2008, a videotape of that interception, and the testimony of the two passengers,  Marrero

---

[7]Allegations of prosecutorial misconduct during closing argument are reviewed de novo. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006).

13

and Fabelo, who said De La Cruz Suarez picked them up in Cuba in his boat and took them out to sea until they were intercepted. This evidence more than amply supported the jury's finding that De La Cruz Suarez committed the acts charged.

The prosecutor highlighted De La Cruz Suarez's earlier February 2007 attempt to bring thirty-four Cubans to the United States in his boat only as evidence that De La Cruz Suarez <u>intended</u> to help the aliens in his boat on March 12, 2008 get to the United States. This is not an improper comment given that evidence of prior crimes is admissible to prove intent. <u>See</u> Fed. R. Evid. 404(b); <u>United States v. Matthews</u>, 431 F.3d 1296, 1310 (11th Cir. 2005). And, this evidence was particularly relevant given that De La Cruz Suarez's chief defense was that he did not have the requisite intent.

Notably, on appeal, De La Cruz Suarez does not challenge the admission of evidence of his prior alien smuggling offense. Furthermore, the jury was instructed twice (once after the evidence was admitted and again during the charge to the jury) that this evidence could be used to determine only whether the defendant had the requisite state of mind and not whether he committed the acts charged in the indictment. Under the circumstances, the challenged comments were not improper and did not affect De La Cruz Suarez's substantial rights.

**AFFIRMED.**

14