[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13787
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-00218-CG-B-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHERYL A. DOTSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(August 24, 2016)

Before TJOFLAT, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Cheryl A. Dotson appeals her convictions for conspiracy to commit loan application fraud, in violation of 18 U.S.C. § 371, and loan application fraud, in violation of 18 U.S.C. § 1014, as well as her 41-month sentence. Dotson argues that the district court erred by admitting evidence of her prior bad acts in violation of Federal Rule of Evidence 404(b). She also argues that the district court erred by imposing a manager/supervisor sentence enhancement, pursuant to U.S.S.G § 3B1.1(b). Finally, she argues that the district court erred in calculating the loss amount attributable to her and, therefore, the sentence enhancement corresponding to that loss. For the reasons set forth below, we affirm.

I.

We review a district court's evidentiary rulings for a clear abuse of discretion. United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003). A district court's evidentiary ruling warrants reversal only if there is a reasonable likelihood that the resulting error affected the defendant's substantial rights. United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999). If the error "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict," reversal is not necessary. Id.

Federal Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to

2

show action in conformity with that character, but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See United States v. Eckhardt, 466 F.3d 938, 946 (11th Cir. 2006). Rule 404(b) is characterized as a rule of inclusion, and thus, 404(b) evidence should not lightly be excluded when it is central to the prosecution's case. United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003). Evidence is admissible under Rule 404(b) if it meets three criteria:

> (1) it is relevant to an issue other than the defendant's character; (2) the prior act is proved sufficiently to permit a jury determination the defendant committed the act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and it must satisfy Federal Rule of Evidence 403.

Eckhardt, 466 F.3d at 946. We consider the evidence in the light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact. Jernigan, 341 F.3d at 1284. Even where the prejudicial effect is close, the abuse of discretion standard is deferential. Id. at 1285.

Under Federal Rule of Evidence 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice, confusing the issues, or misleading the jury. Rule 403 is an extraordinary remedy to be used sparingly, because it permits the trial court to exclude otherwise relevant evidence. United States v. Meester, 762 F.2d

3

867, 875 (11th Cir. 1985).   "[T]he probative value of the extrinsic offense correlates positively with its likeness to the offense charged." United States v. Cardenas, 895 F.2d 1338, 1344 (11th Cir. 1990).

In this case, the Government offered evidence that Dotson had, prior to the loan scheme alleged in this case, written a series of bad checks.  Further, the Government demonstrated that she had entered into a restitution agreement with the district attorney's office regarding the bad checks.  The agreement specified that the district attorney would not pursue criminal charges against her so long as she acknowledged that she wrote the bad checks and agreed to repay them.

The potentially prejudicial effect of this evidence should be obvious. There was a substantial risk that the jury might decide that, because Dotson had committed fraud in the past by knowingly writing bad checks, it was more likely that she committed the loan fraud alleged in this case. That is precisely the sort of inference prohibited by Rule 404(b)(1).  However, evidence of past bad acts is only inadmissible if offered to prove action in conformity with a character trait illustrated by those acts, and the Government claims that it offered the evidence of Dotson's bad checks for other, permissible purposes.

The Government cites two permissible purposes for the evidence of the bad check scheme.  First, the Government points out that the restitution agreement requires that Dotson acknowledge she wrote the bad checks.  Therefore, the

4

Government argues, the bad checks provide examples of Dotson's signature. Because Dotson contested at trial that she actually signed any of the fraudulent loan documents, Government witnesses and the jury could determine, by comparing her signature on the bad checks to her signatures on the loan documents, that she did, in fact, sign the loan documents. Second, the Government argues that the evidence of the bad checks is necessary to complete the story of the crime, because Dotson used proceeds from the loan scheme to repay two of her bad checks.

We find these arguments weak,[1] and we decline to rely on them because the evidence was properly admissible to show motive. We hold that the district court did not abuse its discretion because evidence of the bad check scheme and restitution agreement was admissible to show Dotson's motive to commit loan fraud. Motive is one of the purposes explicitly allowed under Rule 404(b)(2). The Government was permitted to put on evidence demonstrating that Dotson needed money from the loan scheme to make payments required by the restitution

---

[1] First, it seems to us that there must have been a significantly less prejudicial means of providing an example of Dotson's signature than a document acknowledging she committed a crime, evidence of which would otherwise be inadmissible. In fact, the Government actually presented at trial a credit union membership agreement with Dotson's signature on it, and a witness confirmed that photo identification was required to submit the application. Additionally, if the bad checks and restitution agreement were admitted solely as exemplars of Dotson's signature, they should have been redacted to prevent the jury from considering the evidence of her prior bad acts. Second, the "story of the crime" is complete in this case once the false statements on the loan application are made, and the money used to pay off the bad checks represented only a portion of the loan scheme proceeds. We question whether it was truly necessary to present such prejudicial evidence merely to "complete the story of the crime."

5

agreement.  Applying our three part test, then, we conclude that the evidence was relevant to Dotson's motive, an issue other than her character.  The Government provided adequate proof of Dotson's involvement in the scheme by providing the documents and a witness who could testify to the process used to create them.  Finally, though the evidence was prejudicial, we cannot say that any undue prejudice <u>substantially</u> outweighed its probative value.  Therefore, we hold that the district court did not abuse its discretion in admitting the evidence.

## II.

We will affirm a sentence based on harmless error in calculating the guideline range if we know that the district court would have imposed the same sentence regardless of its ruling on a guidelines issue, and the sentence is reasonable even if that issue was decided in the defendant's favor.  <u>United States v. Keene</u>, 470 F.3d 1347, 1349 (11th Cir. 2006).  The defendant has the burden of establishing the unreasonableness of the sentence had the court decided the guidelines issue in the defendant's favor.  <u>See id.</u> at 1350.  We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard.  <u>United States v. Irey</u>, 612 F.3d 1160, 1186 (11th Cir. 2010) (<u>en banc</u>).

We examine the sentence's substantive reasonableness under the totality of the circumstances.  <u>United States v. Shaw</u>, 560 F.3d 1230, 1237 (11th Cir. 2009).

A district court abuses its discretion and imposes a substantively unreasonable sentence when it fails to afford consideration to relevant factors that were due significant weight, gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering the proper factors. Irey, 612 F.3d at 1190. If a district court imposes a sentence outside of the guidelines, we must consider the extent of the deviation and "ensure that the justification is sufficiently compelling to support the degree of the variance." Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 597, 169 L. Ed. 2d 445 (2007). We will remand only when "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotations omitted).

The district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2). In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the

7

Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims.  Id. § 3553(a)(1), (3)-(7).

The district court stated at the sentencing hearing that it had calculated an initial offense level of seven, corresponding to a sentence of 0-6 months.  Over Dotson's objections, the court imposed a three-level enhancement for her involvement as a manger or supervisor of an extensive criminal enterprise, and a twelve-level enhancement because the loss exceeded $200,000. The district court calculated a total offense level of 22.  Dotson argues that the district court erred by imposing the enhancements because the Government failed to prove that the criminal enterprise was extensive and because only a portion of the loss was attributable to her.  Dotson argues that the district court should not have imposed the manager/supervisor enhancement at all, and that it should have imposed only a six-level enhancement for the portion of the loss attributable to Dotson.  If Dotson is correct, the adjusted offense level should have been 13, corresponding to a guidelines range of 12-18 months.

The Government does not respond to these claims at all.  Instead, the Government argues only that the district court, pursuant to our decision in Keene, stated that it would have imposed the same sentence even if it had miscalculated the guidelines or resolved the objections to the enhancements in the defendant's favor.  We question the Government's extensive reliance on Keene without

8

providing any justification for the sentence's reasonability absent the enhancements,[2] but we conclude that Dotson's challenges to the sentence are ultimately unsuccessful.

Dotson first argues that the district court's calculation of the loss was in error.  Dotson does not contest the Government's evidence that the loss resulting from the scheme exceeded $200,000.  Instead, she argues that she only received a portion of that money and that not all of the fraudulent loan applications listed the address, employer, class schedule, or email address associated with Dotson. Dotson cites no law whatsoever indicating that either fact might mitigate the loss attributable to her.  Indeed, we have explicitly held that the entire loss resulting from a conspiracy may be deemed attributable to any individual conspirator: "once a sentencing court determines that certain acts or omissions are 'part of the same course of conduct' as the offense of conviction, it may hold the appellant responsible for all losses resulting from acts by participants for whose conduct the court deems him accountable."  United States v. LaFraugh, 893 F.2d 314, 317 (11th Cir. 1990).  That is consistent with sentencing guidelines, which specify that adjustments to the offense level should be based on:

---

[2] If the district court really had accepted Dotson's objections and imposed only a six-level enhancement for the scope of the loss, the 41-month sentence imposed would have been more than twice the maximum guideline range, and thus may have been of questionable substantive reasonableness.

in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity; that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1)(B).  It is also consistent with the sentencing guidelines regarding the scope of the loss, which refer only to "the loss," not the portion of the loss that ultimately ended up in an individual defendant's bank account. U.S.S.G. § 2B1.1.  As a result, the district court correctly attributed to Dotson the entire loss caused by the scheme.  The district court did not err by imposing a twelve-level enhancement for the scope of the loss.

We turn now to the second enhancement: manager/supervisor responsibility. This enhancement calls for the addition of three offense levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b).  Dotson contests that she was a manager or supervisor of the scheme, and she also argues that the Government failed to prove that the scheme involved five or more participants or was otherwise extensive.  We note briefly that Dotson has a good argument on the extensiveness issue.  Neither the district court nor the presentence investigation made any finding that the scheme was "otherwise

10

extensive." The presentence investigation indicated that exactly five people were involved in the scheme, and the district court made no additional findings of fact on the issue at the sentencing hearing. However, the fifth person allegedly involved in the scheme, Douglas Dotson, was not listed in the indictment, was not a defendant in the case, and was barely mentioned at trial. There was little evidence presented at trial that Douglas Dotson was involved in the criminal activity.

Dotson raises this issue for the first time on appeal. Her objection to the role enhancement was limited to the claim that Dotson was not a manager or supervisor at all. "We review sentencing arguments raised for the first time on appeal for plain error." United States v. Bonilla, 579 F.3d 1233, 1238 (11th Cir. 2009). "[T]he decision to correct the forfeited error is within the sound discretion of the court of appeals, and we should only exercise that discretion if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quoting United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)) (internal quotation marks and brackets omitted).

Even if Dotson is correct that she was not a manager or supervisor at all, the district court's Keene statement is sufficient to justify the sentence imposed. If the initial offense level was seven, and if the district court correctly added 12 offense levels for the size of the loss, the result is an adjusted offense level of 19. That

offense level corresponds to a sentence of 30-37 months. Although Dotson's 41-month sentence was somewhat above this range, we conclude that the sentence was reasonable given the evidence presented at trial demonstrating that she was involved in the management of the conspiracy's assets. See United States v. Glover, 179 F.3d 1300, 1302-03 (11th Cir. 1999). Because the district court noted it would have imposed the same sentence even if it had sustained Dotson's objection to the manager/supervisor enhancement, and because such a sentence would have been substantively reasonable, we uphold the district court's 41-month sentence.

### III.

In summary, we hold that the district court did not abuse its discretion by admitting evidence that Dotson wrote a series of bad checks and entered into a restitution agreement to repay them. That evidence was admissible to demonstrate Dotson's motive. We also hold that the district court correctly imposed a twelve-level enhancement for the scope of the loss caused by the conspiracy of which Dotson was a member, and that the sentence imposed was substantively reasonable even absent the additional enhancement for her supervisory role. The judgment of the district court is

**AFFIRMED.**