[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15858
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cr-00089-MMH-PDB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JON CHRISTOPHER STOUNE,
a.k.a. Mycroft James Holmes,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 31, 2017)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Jon Stoune appeals his convictions for attempting to entice a minor to engage in sexual activity for which a person can be charged with a criminal offense, in violation of 18 U.S.C. § 2422(b); advertising to receive and produce visual depictions involving the use of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2251(d)(1)(A), (d)(2)(B); and attempting to produce child pornography, in violation of 18 U.S.C. § 2251(a). Stoune argues that he was deprived of a fair trial because the district court (1) failed to give a curative instruction following the prosecutor's improper closing argument and (2) permitted lay opinion testimony from a government witness. We affirm.

## I.

Stoune was convicted following a two-day jury trial. The evidence introduced at trial showed that over the course of approximately five weeks, Stoune engaged in a series of sexually explicit text- and Internet-based conversations with "Emily Shannon," a fictitious 14-year-old deaf girl. Unbeknownst to Stoune, he was actually communicating with Sergeant George Stephen Gazdick of the St. Johns County Sheriff's Office, who was participating in an undercover sting operation.

As the conversations began, Stoune identified himself as Mycroft James Holmes. But Emily questioned whether this was Stoune's real name, indicating that a simple Internet search revealed that Mycroft Holmes is a fictional

2

character—the elder brother of detective Sherlock Holmes.  Through some crafty detective work of his own, Sergeant Gazdick was able to uncover Stoune's true identity, which was not disputed at trial.

As the conversations continued, Stoune requested that Emily send pictures of herself, and he sent Emily numerous photos and videos of his genitalia.  Stoune also told Emily about bondage, dominance, and sadomasochism ("BDSM") and discussed his desire for Emily to be his subordinate sex partner.  On multiple occasions throughout these exchanges, Stoune expressed knowledge of Emily's age and of the illegality of his actions.

At Stoune's request, the two eventually agreed to meet in person.  The police apprehended Stoune at the pre-determined meeting location, where he possessed a plethora of BDSM and other sex paraphernalia.  After Stoune was arrested, he admitted to Sergeant Gazdick that he had arrived to meet a 14-year-old girl he met online but claimed he did not intend to have sex with her.  Stoune further indicated that he thought he was engaged in role-playing, although his prior messages to Emily expressly debunked that idea.

At trial, Detective Gazdick testified in detail concerning the events that led to Stoune's arrest.  During cross-examination, Stoune questioned Detective Gazdick concerning his false representations to Stoune, such as by posing as Emily.  Detective Gazdick admitted that he was engaged in role-playing himself.

But on redirect, Detective Gazdick further stated, "You don't sell narcotics in a police uniform." As part of the same line of questioning, the prosecutor then asked the following question: "And so do you have any idea or any opinion, based upon your training and experience, as to why a subject that you were chatting online with would provide you with a false name?" Stoune immediately objected on the ground that "I think that goes beyond his expertise." The district court overruled the objection, and Sergeant Gazdick responded, "To avoid detection. To avoid being caught."

During his closing argument, Stoune argued that the jury should not find him guilty of enticement in part because he did not intend to have sex with a child. In rebuttal, after discussing the evidence establishing Stoune's intent, the prosecutor posed a rhetorical question to the jury: "Is there anyone who doesn't believe that if the defendant had met the child [Emily], that sex would not have occurred?" Stoune objected, and the district court instructed the prosecutor to "move on," which the prosecutor did. The jury ultimately found Stoune guilty as charged.

## II.

On appeal, Stoune argues that the district court erred by failing to provide a curative instruction after sustaining his objection to the prosecutor's rhetorical question during rebuttal closing argument. In the same vein, Stoune contends that the prosecutor's argument was so improper that it deprived him of a fair trial.

4

Stoune specifically claims that the prosecutor's use of the term "child," when there was actually no child in the case, suggested that Stoune was a (statutory) rapist.

We review claims of prosecutorial misconduct de novo. *United States v. Flanders*, 752 F.3d 1317, 1332 (11th Cir. 2014). To establish prosecutorial misconduct, the appellant must show that the prosecutor's remarks were improper and prejudicially affected his substantial rights. *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006). We evaluate the prejudicial impact of a prosecutor's statements in the context of the trial as a whole. *United States v. Hernandez*, 145 F.3d 1433, 1438 (11th Cir. 1998). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *Eckhardt*, 466 F.3d at 947. "When the record contains sufficient independent evidence of guilt, any error is harmless." *Id.*

Here, we find that even if the prosecutor's remarks were improper, they were not "so pronounced and persistent that [they] permeate[d] the entire atmosphere of the trial." *United States v. Weinstein*, 762 F.2d 1522, 1542 (11th Cir. 1985) (quoting *United States v. Alanis*, 611 F.2d 123, 126 (5th Cir. 1980)). When taken fairly in context, the prosecutor's rhetorical question was a lone response to Stoune's lack-of-intent argument. Moreover, the jury knew that

5

Stoune was actually communicating with an adult male police officer, rather than a child, and that there was no real prospect for sex to occur.

In light of the overwhelming evidence of guilt produced at trial, including as to Stoune's intent, there is no reasonable probability that, but for the remarks, the outcome of the trial would have been different. *Eckhardt*, 466 F.3d at 947. The district court also instructed the jury that "only the evidence in the case is to be considered," rectifying any error. *United States v. Jacoby*, 955 F.2d 1527, 1541 (11th Cir. 1992); *Weinstein*, 762 F.2d at 1542. Stoune did not request an additional curative instruction. He has failed to establish that his substantial rights were prejudicially affected.

## III.

Stoune also argues that the district court erred by permitting Sergeant Gazdick to testify concerning why a subject he met online would provide a false name. Stoune argues that Sergeant Gazdick's testimony was inadmissible because Sergeant Gazdick was not qualified as an expert, so he was allowed to merely speculate on the topic. Because Sergeant Gazdick's testimony suggested Stoune's consciousness of guilt, Stoune further argues that it was prejudicial.

We review the district court's evidentiary ruling for a clear abuse of discretion, and if we find error, we apply the harmless-error standard. *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011); *United States v.*

*Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005).  A non-expert witness may give opinion testimony if the testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  We have held that under Rule 701, a lay witness may testify "based upon [his] particularized knowledge garnered from years of experience within [a] field."  *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003).

Here, the district court did not clearly abuse its discretion by permitting Sergeant Gazdick to testify as a layperson.  In general, specialized knowledge is not required to understand that individuals who are knowingly engaged in criminal activity often provide false names in order to avoid being caught.[1]  In this case, Stoune's intent was a central issue at trial.  Further, Sergeant Gazdick testified that he had years of relevant experience in his field.  In addition to working for the Internet Crimes Against Children taskforce on cases that involved child exploitation, child pornography trading, and online enticement of children, he

---

[1] Stoune provided a more innocuous reason during his closing argument.  Based upon Stoune's post-arrest statement and Detective Gazdick's testimony at trial, Stoune argued that he was simply engaged in role-playing.  The jury rejected his argument.

stated that he was specifically trained in conducting these types of undercover investigations online and had been doing such investigations for several years.

Under these circumstances, we find no error with allowing Detective Gazdick to offer an opinion as to why an online subject would provide a false name, especially when Stoune first brought up the topic during cross-examination. *See Jayyousi*, 657 F.3d at 1102–03; *Tampa Bay Shipbuilding*, 320 F.3d at 1223. We also find that the admission of Detective Gazdick's testimony on this issue had little to no influence on the outcome of the case. *See Henderson*, 409 F.3d at 1300. As indicated above, there was more than enough evidence to support the jury's finding of mens rea, notwithstanding this testimony. Therefore, even if there was error, we would still decline to reverse. *See id.*

## IV.

Based upon our careful review of the record and the parties' briefs, we conclude that Stoune received a fair trial. Accordingly, we affirm.

**AFFIRMED.**