[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10015
Non-Argument Calendar
_____

D.C. Docket No. 5:18-cr-00002-RBD-PRL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN PABLO MALAGON-ALVAREZ,

Defendant,

AURELIO GOMEZ-ANDRADE,
JOSE LUCIO MENDOZA SERVIN,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 2, 2021)

Before MARTIN, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Aurelio Gomez-Andrade and Jose Lucio Mendoza Servin appeal their convictions for conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846.  Gomez-Andrade argues that he is entitled to a new trial because the district court abused its discretion in allowing the government to ask two leading questions during the direct-examination of a cooperating witness.  Mendoza argues that the district court abused its discretion in refusing to declare a mistrial after the government referred to the drugs as having come "across the border" during its closing argument.  Mendoza also argues that his ten-year mandatory-minimum sentence is a cruel and unusual punishment that is prohibited by the Eighth Amendment.  After careful consideration, we affirm.

I.

Gomez-Andrade argues that he is entitled to a new trial because the district court abused its discretion in overruling his objections to two leading questions posed by the government during trial.  He contends that the questions were leading and had a material effect on the outcome of the trial because the questions helped establish the temporal scope of the conspiracy.  He also maintains that if his objections had not been overruled, the temporal scope of the conspiracy would have been more limited, and the government might not have been able to prove that the conspiracy possessed with the intent to distribute more than one kilogram of heroin.

2

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Khan*, 794 F.3d 1288, 1293 (11th Cir. 2015). "A leading question is one that suggests to the witness the answer desired by the examiner." 1 McCormick on Evidence § 6 (8th ed. Jan. 2020 update); *see Azcona v. United States*, 257 F.2d 462, 466 (5th Cir. 1958). Although a district court "has reasonable discretion to permit leading questions," it abuses that discretion when it allows a question that "has the effect of supplying a witness with a false memory." *United States v. Johnson*, 495 F.2d 1097, 1101 (5th Cir. 1974). However, we will not reverse a non-constitutional evidentiary error unless there is "a reasonable likelihood that the defendant's substantial rights were affected." *United States v. Reeves*, 742 F.3d 487, 501 (11th Cir. 2014) (quotation marks omitted).

To show that a defendant was part of a drug conspiracy, the government must prove that: "(1) there was an agreement between two or more people to unlawfully distribute . . . controlled substances in violation of [21 U.S.C.] § 841(a)(1); (2) the defendant knew about the agreement; and (3) the defendant voluntarily joined the agreement." *United States v. Iriele*, 977 F.3d 1155, 1169 (11th Cir. 2020) (quotation marks omitted). The government need not prove that a single defendant "*himself* possessed [the controlled substances] with intent to distribute." *United States v. Curbelo*, 726 F.3d 1260, 1269 (11th Cir. 2013). Rather, the government must prove only that a defendant "joined a conspiracy that

3

had the 'object' of . . . possessing with intent to distribute more than [the controlled substances]." *Id.*; *see also Salinas v. United States*, 522 U.S. 52, 63–64 (1997) ("The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other.").

The first question that Gomez-Andrade challenges concerned the temporal scope of a cooperating witness's heroin purchases from a third defendant, Juan Pablo Malagon-Alvarez:[1]

> Q:  And from the period of, say, the middle or summer of 2015 up until the time of your arrest [in November 2017], approximately what period of time were you getting heroin from Pablo?"
>
> [Gomez-Andrade's counsel]:  Objection.  Leading.
>
> The Court:  Objection is overruled.
>
> The Witness:  What was the question?
>
> Q:  What period of time going back from the date you were arrested were you buying heroin from or getting heroin from Pablo, but going back as far as a year and a half before, the middle of 2015?
>
> A:  About a year.

---

[1] Malagon-Alvarez is not a party to this appeal.  *See United States v. Malagon-Alvarez*, 819 F. App'x 897, 898 (11th Cir. 2020) (affirming Malagon-Alvarez's conviction under *Anders v. California*, 386 U.S. 738 (1967)).

The question was not leading because it did not suggest an answer to the witness.[2]

Rather, the question oriented the witness to a particular time frame and asked the

witness how long—within that time frame—he had been purchasing heroin from

Malagon-Alvarez.  The question's framing did not suggest an answer to that

question.

The second question concerned the circumstances of the witness's heroin

purchases from Malagon-Alvarez:

Q:  After you called Pablo to make contact to get the heroin, when
you went to pick up the heroin, where would you go?

A:  Out to the farm.

Q:  And who would be there?

A:  Whoever was there.  Whoever was working there, I guess.

Q:  Was there a particular individual that you described already that
you would actually get heroin from?

[Gomez-Andrade's counsel]:  Objection.  Leading.

The Court:  Objection is overruled.

A:  Yeah.

Q:  And who was that?

---

[2] Even if the question was leading, Gomez-Andrade concedes that the witness "did not take all the bait."  The trial record confirms that view.  Assuming that the government was attempting to lead the witness into answering that he had been purchasing heroin from Malagon-Alvarez for approximately one-and-a-half to two years, the witness limited the scope of his involvement to "[a]bout a year."  Accordingly, if the government's question was leading, there is no reasonable likelihood that the question affected Gomez-Andrade's substantial rights.  *Reeves*, 742 F.3d at 501.

A:  [Gomez-Andrade].

Shortly before the question was posed, the witness testified that he purchased heroin from both Malagon-Alvarez and Gomez-Andrade.  Thus, this second question was leading because it suggested that the witness's answer should identify either Malagon-Alvarez or Gomez-Andrade.

Nevertheless, there is no reasonable likelihood that the question affected Gomez-Andrade's substantial rights.  *Reeves*, 742 F.3d at 501.  During trial, the jury heard testimony that implicated Gomez-Andrade as a member of the drug conspiracy.  Two cooperating government witnesses testified that they purchased drugs from the defendants, including Gomez-Andrade.[3]  And the government introduced other evidence of Gomez-Andrade's participation in the conspiracy, including an audio recording of a drug transaction in which Gomez-Andrade participated and extensive text communications between the defendants.  Thus, contrary to Gomez-Andrade's position, there is not a reasonable likelihood that the outcome of his trial would have been different absent the leading question.[4]

---

[3] Gomez-Andrade questions the credibility of the government's cooperating witnesses. But "[q]uestions of witness credibility are the exclusive province of the jury, and credibility issues will not be entertained on appeal." *United States v. Hernandez*, 743 F.3d 812, 815 (11th Cir. 2014).

[4] Gomez-Andrade suggests that there was a reasonable probability that the leading question affected his substantial rights because the question elicited an answer that was critical to establishing that Gomez-Andrade joined the conspiracy in time to be responsible for possession with intent to distribute more than a kilogram of heroin.  That argument fails because, as Gomez-Andrade concedes, the jury had already heard testimony from a cooperating government witness

II.

Mendoza argues that the district court abused its discretion in refusing to grant his motion for a mistrial after a prosecutor referenced drugs coming "across the border" during closing arguments. He contends that because the government's case was not overwhelming and the "citizens of this country are biased against Mexican immigrants," there is a reasonable probability that the outcome of the trial would have been different if the comment had not been made.

The reference occurred during the prosecutor's description of the defendants' roles in a larger conspiracy. The prosecutor explained that drug conspiracies often involve "different sellers that work for a common supplier" and that co-conspirators in such schemes often assume "different roles," including conspirators who "might be bringing drugs in from across the border." Counsel for Mendoza's co-defendant objected and requested a mistrial, which the district court denied.[5] The district court then offered to provide a curative instruction, and Mendoza's counsel accepted that offer because he believed that "asking the jury to disregard any reference to the source of the origin of the drugs would be sufficient"

_____

that was "easily supportive of the liability of all three defendants for more than a kilogram of heroin."

[5] At the beginning of trial, the district court advised the parties that it was "going to presume . . . that if [counsel for any defendant] disagree[d] with [his] colleague's position . . . you'll let me know." Mendoza's counsel did not express any disagreement with his co-counsel's objection to the remark. Thus, the government concedes that Mendoza's counsel did not waive any objection by failing to raise the objection himself.

to cure any prejudice.[6]  The district court then issued the curative instruction to the jury: "Ladies and gentlemen, there's no evidence in this case as to the origin of any of the alleged illegal substances.  So [to] the extent the Government may have suggested something about the origin, you should disregard that."  The district court also instructed the jury at the beginning and the end of trial that it could "consider only the evidence that I have admitted in the case" and that "anything the lawyers say is not evidence in the case."

We review a district court's denial of a motion for mistrial for abuse of discretion.  *United States v. Green*, 981 F.3d 945, 959 (11th Cir. 2020).  To be entitled to a mistrial ruling, a defendant must show substantial prejudice*,* which occurs "when there is a reasonable probability that, but for the alleged error, the outcome of the trial would have been different.  *United States v. Grzybowicz*, 747 F.3d 1296, 1311 (11th Cir. 2014).  "[T]he prejudicial effect[] of an improper statement may be reduced or eliminated where 'the record contains sufficient

---

[6] This concession by Mendoza's counsel potentially forecloses his challenge to the remark under the invited-error doctrine because he represented to the district court that the curative instruction "would be sufficient."  "[T]he doctrine of invited error is implicated when a party induces or invites the district court into making an error."  *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) (quotation omitted).  And when "a party invites error, [we are] precluded from reviewing that error on appeal."  *United States v. Harris*, 443 F.3d 822, 823–24 (11th Cir. 2006) (quotation omitted).  We decline to resolve Mendoza's challenge on this ground because the parties have not briefed the issue and, as we will explain, Mendoza's challenge fails on the merits.

independent evidence of guilt.'" *Id.* (quoting *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007)).

At the same time, we review a claim of prosecutorial misconduct *de novo*. *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006). Such misconduct occurs when a prosecutor makes: (1) improper remarks that (2) prejudicially affect the defendant's substantial rights. *Id.* The second element is met where it is reasonably probable that, but for the remarks, the outcome of the trial would have been different. *Id.* However, if the trial "record contains sufficient independent evidence of a defendant's guilt, any error is harmless." *Id.*

> In determining whether prosecutorial misconduct occurred, we consider:
>
> (1) whether the challenged comments had a tendency to mislead the jury or prejudice the defendant; (2) whether the comments were isolated or extensive; (3) whether the comments were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof establishing the guilt of the defendant.

*Reeves*, 742 F.3d at 505. When the challenged comment is made during closing argument, the statement must be viewed in the context of the entire trial, including any curative instruction. *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009). "Because statements and arguments of counsel are not evidence, improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered." *Id.* (quotation marks omitted). And "we presume that the jury followed a district court's curative instructions." *Id.* Thus,

9

when a district court gives a curative instruction, we will reverse "only if the evidence is so prejudicial as to be incurable." *Id.*

Mendoza has not met his burden to show that the prosecutor's reference to drugs coming "across the border" during closing argument amounted to prosecutorial misconduct warranting a new trial. Turning to the first factor, the reference did not tend to prejudice Mendoza by suggesting that Mendoza had a connection to Mexico for several reasons.[7] The jury had already observed that Mendoza utilized a Spanish interpreter during trial and received evidence that the defendants typically conducted heroin sales in Spanish. And, as Mendoza concedes, the trial record was replete with references to Spanish names and the Spanish language. Moreover, considering the entire trial record, we think it is implausible that the jury ignored the possibility of an international drug conspiracy until the moment the prosecutor made a passing comment that was not directed at either defendant. Thus, Mendoza cannot show that the remark had a tendency to mislead or prejudice the jury. Considering the second factor, the reference to drugs coming from "across the border" was an isolated incident at a four-day trial. The fourth factor also favors the government because it presented a strong case against Mendoza, which was buttressed by the testimony of two cooperating witnesses

---

[7] Because we find that the remark did not prejudice Mendoza, we need not determine whether it is appropriate to assume—as Mendoza does—that the jury suffered from anti-immigrant bias or whether the remark would serve to trigger any such bias.

who had purchased heroin from Mendoza.  Even if, under the third factor, the prosecutor's remark was intentionally placed before the jury—as Mendoza contends[8]—we conclude that the other factors weigh heavily against him. Accordingly, Mendoza has failed to show prosecutorial conduct, and there is no reasonable probability that the outcome of the trial would have been different if the reference to drugs coming "across the border" was not made.

Even if there was some doubt on that score, the district court's curative instruction was sufficient to overcome the remark's potentially prejudicial effect. The district court immediately issued a curative instruction, and it instructed the jury at the beginning and end of trial to consider only evidence admitted at trial. Under these circumstances, we reject Mendoza's argument that the prosecutor's remark was "so prejudicial as to be incurable." *Lopez*, 590 F.3d at 1256.

For all these reasons, the district court did not abuse its discretion by refusing to declare a mistrial.

### III.

Mendoza also argues that the district court plainly erred in sentencing him to a ten-year mandatory minimum because that sentence violates the Eighth Amendment's prohibition of cruel and unusual punishment.

---

[8] The parties dispute whether the prosecutor made the remark intentionally.  We need not resolve this dispute because the remaining factors weigh heavily against Mendoza.

11

Ordinarily, we review the constitutionality of a statute *de novo* but, when as happened here, the issue is raised for the first time on appeal, we review only for plain error. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). To prevail under plain error review, a defendant "must show that the district court made an error, that the error was plain, and that it affected his substantial rights." *Iriele*, 977 F.3d at 1177. If he makes that showing, we have discretion to reverse the district court "only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* "[T]here can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving" the issue. *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (quotation omitted).

Mendoza was convicted of one count of conspiracy to possess with the intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin. Thus, he was subject to a ten-year mandatory-minimum sentence. 21 U.S.C. § 841(b)(1)(A)(i). The district court imposed that mandatory-minimum sentence (120 months), followed by five years of supervised release.

The Eighth Amendment prohibits imposing "cruel and unusual punishments." U.S. Const. amend. VIII. In a non-capital case, the Eighth Amendment "encompasses, at most, only a narrow proportionality principle." *United States v. Suarez*, 893 F.3d 1330, 1335-36 (11th Cir. 2018) (quotation

12

omitted). The defendant bears the burden of showing "that the sentence imposed is grossly disproportionate to the offense committed." *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) (quotation omitted). But in non-capital cases, "successful Eighth Amendment challenges are exceedingly rare." *United States v. Flanders*, 752 F.3d 1317, 1342 (11th Cir. 2014) (quotation marks omitted). Indeed, as recently as *Suarez*, "we have never held that a non-capital sentence for an adult has violated the Eighth Amendment." *Suarez*, 893 F.3d at 1336.

Mendoza argues that his ten-year sentence is grossly disproportionate to the offense committed because he had no prior criminal history and treatment and education would be more effective means of rehabilitation. He does not identify any decision from the Supreme Court or this Circuit that holds that the ten-year mandatory-minimum sentence prescribed by § 841(b)(1)(A) violates the Eighth Amendment. Because Mendoza cannot identify any "precedent from the Supreme Court or this Court directly resolving" the constitutionality of the ten-year mandatory-minimum sentence, he has failed to show that the district court committed any error that was plain. *Chau*, 426 F.3d at 1322 (quotation omitted).[9]

**AFFIRMED.**

---

[9] In his reply brief, Mendoza appears to concede that his argument fails plain-error review. Thus, he notes that he is preserving the argument for further review.